# Robert J. Jamison *vs.* William Chesnut and others.

A court of equity has power to vacate a deed executed by an insolvent debtor before his application for the benefit of the insolvent laws, but *not to* decree a sale of the property by a trustee of its own selection.

When such a deed is vacated, the title immediately vests under the insolvent system in the trustee in insolvency, who must make the sale and administer the assets under the direction of a court of law.

Where creditors file a bill to vacate such a deed, the insolvent trustee is a *necessary party* to the suit; and if such trustee be dead, a new one must be appointed by a court of law, under the fourth section of the act of 1805, ch. 110, before the bill is filed to which he must be made a party.

APPEAL from the Equity Side of the Circuit Court for Carroll county.

The bill in this case was filed on the 8th of July 1852, by

the appellees, creditors of Robert J. Jamison, to vacate an alleged fraudulent conveyance, executed by him to his mother, Rebecca Jamison, on the 9th of December 1845.

The bill charges, in substance, that this deed is fraudulent and void, both under the insolvent laws and the statute of 13 *Eliz., ch.* 5; that on the 23rd of June 1846, Jamison applied for the benefit of the insolvent laws, obtained a final discharge and that Thomas Barthalow was appointed his trustee, but died soon after without having discharged any of the duties of trustee and without having attempted to vacate said fraudulent deed; that the complainants were his creditors at the time he petitioned and that the property mentioned in the deed vested in said trustee under the insolvent laws, and he being dead, it will be necessary to appoint a trustee in his place to execute the trust. The prayer of the bill is, that the deed may be vacated and a trustee appointed in the place of Barthalow to execute the trust and sell the land in question, and calls for answers, but not on oath.

The deed assailed by the bill purports, in consideration of $1400 paid to the grantor by the grantee, to convey all the grantor's right and interest, as heir at law of his father, in a tract of land, containing about two hundred and sixteen acres, to Rebecca Jamison, the mother of the grantor.

After answers filed, (the allegations of which need not be stated,) a commission was issued, under which testimony was taken to sustain the charges of fraud contained in the bill. David Rephart, the principal witness for the complainants, testified, in substance, that in the fall of 1848, he had the State taxes to collect and called at the house of Robert J. Jamison, where Rebecca Jamison, his mother, resided, and inquired for Robert J. Jamison, but he was not at home; witness told her he had a tax bill against him and also one against her, and asked her how is it that Robert J. Jamison is taxed with the property in 1842 and you with it in 1846? She replied, when I married my husband I had about $2000 in money, and my husband was so much indebted that it took all my money to pay his debts, and when these Baltimoreans came on Johnson, (meaning Robert J. Jamison,) and Stevens,

Johnson gave the farm to satisfy me for the money which I paid for his father, and now I have got my money back and I am satisfied.   The said Rebecca was married to the father of Robert J. Jamison about thirty-eight or forty years before the deed was executed.   There was also proof that the land mentioned in the deed was worth from $20 to $25 per acre.

There was no proof on the part of the defendants, except that several witnesses were examined for the purpose of impeaching the character of the witness, Rephart, for truth and veracity, some of whom swore they would not believe on oath in a matter in which he was interested, whilst others swore that they would believe his oath in a matter in which he was not interested.

The court, (NELSON, J.,) passed a decree vacating the deed as fraudulent and void, directing the land mentioned in it to be sold for the benefit of creditors and appointing a trustee to make such sale.   From this decree the defendant appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*James Raymond* for the appellant, argued:

1st.   That the circuit court for Carroll county, *in equity*, had no jurisdiction in this case, not even to substitute a trustee in the place of the deceased trustee.    This jurisdiction is expressly conferred on the county court, as *a court of law*, in which the insolvent proceedings were had, by the act of 1805, ch. 110, sec. 4.

2nd.   That if the court below had jurisdiction the proceedings are still defective for want of *proper parties*, and the decree, therefore, must be reversed and the cause remanded, under the act of 1832, ch. 302.   It matters not whether the deed be assailed under the insolvent laws or the statute of *Elizabeth;* for in either case the *insolvent trustee* must take charge of and administer the fund, and *he must be* a party *to the suit*.   The fact that the trustee was *dead* can make no difference, for the fourth section of the act of 1805, ch. 110, expressly provides for the appointment of a new trustee in case

of the *death* of the one first appointed. The complainants, therefore, should, before filing their bill, have applied to the *law side* of the county court to appoint a *new trustee* in the place of Barthalow, who should have been made a party to the case. The insolvent trustee, under the laws and decisions of this State, is the *only* party who can take charge of the property. The *title* is in him and he is not *before* the court. The decree directs the title of the *parties to the suit* only to be sold, and the purchaser, in the absence of the insolvent trustee, in whom alone the title is vested if the deed be set aside, would get *no title.* 5 *Gill,* 139, *Alexander vs. Ghiselin.* 1 *Md. Rep.,* 472, *Waters vs. Dashiell.* 3 *Do.,* 463, *Manahan vs. Sammon.* 3 *Green's Ch. Rep.,* 505, *Smith vs. Trenton, Delaware, Falls Co.*

3rd. The decree directs the sale to be made by the trustee appointed by it, and the fund to be administered in equity. This is in direct contravention of the insolvent laws and the decisions above cited. A court of equity has only power to set the deed aside. Its jurisdiction *stops there;* the *sale* must be made by the insolvent trustee and the fund *distributed* under the *insolvent laws.*

4th. That the facts in the case do not warrant the decree setting aside the deed for fraud.

*Joseph M. Palmer* for the appellees, argued:

1st. That the act of 1841, ch. 163, shuts up the case in this court so far as regards the question of *jurisdiction,* no exceptions to the jurisdiction having been filed in the court below. This law expressly enacts, that the defendant shall not be permitted in the appellate court to urge or rely upon any objection to the jurisdiction of the court below, unless it shall appear by the record that such objection was made or raised in said court. 1 *Md. Rep.,* 144, *Pierson vs. Trail.*

2nd. The creditors clearly *have the right* to file a bill to vacate a deed of their debtor as fraudulent as against them. Indeed, *until lately,* it was doubted whether any one but creditors could file such a bill, and it has been decided that the insolvent trustee may do so only because he *represents* the credi-

tors. If the trustee *refuses* to act, or is dead, the creditors do not lose *this right*. They may still file their bill; and a court of equity once having jurisdiction of *the case*, will hold on to it until complete justice be done between the parties. Where equity once has jurisdiction for any purpose, it will carry it out for every purpose. Here the court below clearly had jurisdiction to *vacate* the deed; and having jurisdiction for this purpose, it has also the power to carry out this jurisdiction by directing a sale and appointing a *trustee* of its own to effect it. In the case of *Swan vs. Dent*, 2 *Md. Ch. Dec.*, 112, a deed of an insolvent debtor was vacated by the chancellor and the decree appointed a trustee to sell the property, though the insolvent trustee was before the court as a party to the proceedings. This equity trustee sold the property and distributed the fund in equity, and this decree and these proceedings were *affirmed* by the Court of Appeals in 7 *Gill*, 374. But suppose there is error in the decree below in this particular, this court still has the power to pass just such a *decree* as the court below ought to have passed, and there is, therefore, no necessity for remanding the case under the act of 1832, ch. 302.

3rd. The question then recurs, is there fraud or not in this case sufficient to warrant the court below in vacating the deed? Upon this point I think no doubt can be left upon the mind of any one who reads this record. Under the facts and circumstances as disclosed by the record, the deed is utterly fraudulent, covinous and void both at common law and under the statute of 13*th Eliz.*, ch. 5.

MASON, J., delivered the opinion of this court.

We do not consider that there is any question of jurisdiction involved in this case. That a court of equity has power to pronounce the deed in question to be void upon the ground of fraud, whether under the statute of *Elizabeth* or under our insolvent system, there can be no doubt; and this was the main, if not the exclusive, ground, upon which the jurisdiction of the court of equity was invoked in the present case. The objections taken by the appellant to the proceeding are, want of proper parties and error in directing the sale of the property in a mode different from that designated by the insolvent laws.

The material facts of the case are simply these: After the application of the appellant for the benefit of the insolvent laws, and before this proceeding was instituted, the trustee of the insolvent died and no successor has been appointed in his stead, in pursuance of the act of 1805, ch. 110, sec. 4. In this state of the case, the complainants filed their bill to vacate the appellant's deed, executed prior to his application aforesaid, upon the ground of its being in fraud of creditors. The appellant now contends, that before this proceeding could be regularly instituted, it was the duty of the complainants, or some other interested party, to have applied to the law side of the circuit court for the appointment of a new trustee, who should thereupon have been made a party to this equity proceeding. This position is undoubtedly correct. The theory of our insolvent system regards the trustee as the mutual representative of the rights and interests of both the debtor and his creditors, and any proceeding like the present, which is designed to effect those rights and interests, must embrace the trustee as a party to it. Upon this ground alone we find sufficient to warrant us in reversing this decree and in remanding the cause.

As this case is remanded, we have no difficulty in adding, that a court of equity had no power to decree a sale of this property by a trustee of its own selection. It had power to declare the deed *void*, and no more. Immediately thereupon the title vested, under our insolvent system, in the trustee in insolvency, and he was the party to make the sale and administer the assets of the insolvent under the direction of the court of law. This doctrine is established for the purpose of preventing a conflict of jurisdiction which would inevitably result from an opposite theory, and has been recognised by a number of cases heretofore decided in this court. Besides, there is no valid reason why it should be otherwise. Our laws have conferred upon the circuit courts, as courts of law, the amplest powers to administer and settle the estates of insolvents, through the instrumentality of a trustee appointed under the insolvent system, and there can therefore be no reason for invoking the aid of a court of equity. In support of these views we refer

to the cases of *Alexander vs. Ghiselin,* 5 *Gill,* 179; *Waters vs. Dashiell,* 1 *Md. Rep.,* 472; *Manahan vs. Sammon,* 3 *Md. Rep.,* 463.

Unless the aspect of this case should hereafter, upon the coming in of the new trustee as a party, be materially varied, we have no hesitation in saying that the deed was properly vacated, upon the evidence as disclosed in the record, as being in fraud of the rights of creditors.

*Decree reversed and cause remanded.*