# JACOB M. BUCKEY *vs.* ARCHIBALD T. SNOUFFER.

Where a party applies for the benefit of *our insolvent laws*, his property comes under the *custody of the law*, for the benefit of his creditors, and cannot be *distrained for rent* due by the applicant at the time of his application.

Rent is not *per se* a *lien* on goods found on the premises: it binds as a *lien* only when the goods are *seized* under a distress.

A claim for *rent* due at the time of the insolvent's application, without a *previous* levy, accompanied by a *subsequent* distress, is not a *lien* or *incumbrance*, within the meaning of the 7th sec. of the act of 1805, ch. 110, and therefore, does not follow the property as an incumbrance or lien into the hands of the trustee.

APPEAL from the Circuit Court for Frederick county, sitting in insolvency.

John B. Snouffer applied for the benefit of the insolvent laws, on the 3rd of August 1852, and the appellee was appointed his trustee, and gave bond as such, and under order of the court, sold all the property of the insolvent on the 30th of August 1852. Much of this property consisted of growing corn and wheat in the straw, raised by the insolvent, upon a farm which he had rented from Charles C. Tucker, and was not delivered to the purchasers, but remained on the premises under the control of the trustee. *Afterwards*, on the 1st of September 1852, the landlord, Tucker, levied a warrant of distress on this wheat and corn whilst it was so upon the premises, for one year's rent due the 1st of July 1852, amounting to $958.05, and sold the same to pay, this rent. The trustee then claimed to have deducted from the amount of sales ($3001.11) the sum of $1588, for the amount of property so sold by Tucker, and $211.84,

costs and expenses. This application, Buckey, the appellant, a judgment creditor of the insolvent, resisted, upon the ground that the seizure and sale by the landlord was illegal. The case was then referred to an auditor, who, under directions of the counsel for the parties, stated two accounts, Nos. 1 and 2. The case was then submitted to the court, upon an agreed statement of facts, which is sufficiently set out in the opinion of *Mason, J.,* of this court. The court below, *(Nelson, J.,)* being of opinion from the facts contained in the statement on which the case was submitted, that Tucker, the landlord of the insolvent, "had a clear legal right to distrain and sell for his rent, the property mentioned, notwithstanding the insolvent's petition for the benefit of the insolvent laws," passed an order ratifying audit No. 2, which allowed the trustee a deduction from the assets in his hands, the sum of $1588, being the amount of the sale under the distress for rent. From this order Buckey appealed.

The cause was argued before EccLESTON, TUCK and MASON, J.

*Joseph M. Palmer* for the appellant.

The sale of the corn and wheat in question, by the landlord, while the property was in the actual custody and possession of the trustee, was in direct violation of the insolvent laws, and void, it being in the *custody of the law,* and not to be sold by any one except the trustee. By our insolvent laws, all the property and estate of the insolvent vests absolutely in the trustee, for the benefit of creditors, to be sold and disposed of by him under the directions of the court, free and clear of all judgments, incumbrances and liens, existing at the time of the application, and the proceeds of sale, "after satisfying all *judgments, incumbrances and liens,*" are to be divided amongst creditors. After the application, all the insolvent's property is in the custody of the law, under the absolute control of the court, and must be *sold* by the trustee, and cannot be sold by any one else, under any circumstances. This is settled law. *Acts* of 1805, ch. 110, sec. 7; 1808, ch. 71, sec. 3; 1812, ch.

77; 1827, ch. 70. 5 *Gill,* 178, *Alexander vs. Ghiselin.* 1 *Md. Rep.,* 471, *Waters vs. Dashiell.* 3 *Do.,* 463, *Manahan, et al., vs. Sammon,* et al. 8 *Do.,* 34, *Jamison vs. Chesnut.* This construction of these laws is based upon reason and sound policy, and should not in any case be departed from. The case at bar is a perfect illustration of the soundness of the principle; it shows what mischief to the rights of creditors may be accomplished, by suffering the property to be taken out of the custody of the law, and sold by any one else than the trustee. The property sold by virtue of this distress warrant, to pay $958.05 rent, reduces the proceeds of sale from $3001.11 to $953.82, to be distributed among creditors. Such sacrifice and injury to creditors is intolerable, and shocking to the moral sense of any tribunal. In *Waters vs. Dashiel,* it was decided that property not returned in the schedule, and not in the *custody of the trustee,* may be levied upon under a *fi. fa.,* under the provision of the 7th sec. of the act of 1827, ch. 70. Our insolvent laws are not like the bankrupt laws of England. The assignee in bankruptcy cannot sell free of all incumbrances and liens as a trustee can. He takes the property as the bankrupt held it, and all persons having liens can enforce them, unless they come in and prove under the commission, which they cannot do without waiving or giving up their security. 1 *Bac. Abr.,* 685 to 688. It is well settled, that goods in the custody of the law cannot be distrained for rent, and as the property of an insolvent *in this State* is in the custody of the law, the taking of it in this case by the landlord was illegal and void.

But even if he had the right to seize the property by his distress warrant, he certainly had no right to *sell it.* Rent is not in England a lien on the goods of tenants, until actually seized under a distress warrant. 1 *Bac. Abr.,* 696. *Eden on Bankruptcy,* 304. It is said that goods may be distrained in England, after a commission of bankruptcy, because they are not in the custody of the law, provided they are distrained before they are sold. 1 *Atk.,* 102 to 104. 1 *Bac. Abr.,* 695, 696, *Eden on Bankruptcy,* 304, 305. In this case the property had been sold. But it is said it was not delivered to the pur-

chaser. How could it be delivered? It was growing corn and wheat in the straw: the purchaser had no time to take it in possession, even if it had been severed from the free-hold. The contract of sale by the trustee was valid, and the purchasers would doubtless have complied with the sale at a proper time, if the property had not been illegally seized and sold by Tucker. In fact the property was sold by the trustee and could not be distrained. But even if it could under the circumstances be distrained, it could not be sold by the landlord. The trustee was bound to sell and distribute the proceeds under the direction of the court. He had no right to connive with the landlord, to benefit him to the prejudice of creditors- It was not for him to undertake to decide who was entitled to the proceeds of his sale: that was for the court. In any aspect therefore in which this case can be presented, the order of the court below must be reversed.

*R. H. Marshall* for the appellee.

It is assumed by the argument on the other side, that the moment a party petitions for the benefit of the insolvent laws his whole property passes into the hands of his trustee and is *in custodia legis,* and, therefore, *cannot be distrained for rent.* Is this so? We say not, and that the property in this case was not in the custody of the law, so far as to protect it from the remedy of distress for rent due at the date of the application.

Rent is not a lien upon the goods of tenants until actually seized under a distress warrant, (1 *Bac. Abr.,* 696; *Eden on Bankruptcy,* 304,) and this would be lost if the landlord did not proceed to sell. The insolvent acts nowhere invest the trustee with power to sell free of the landlord's right of distress, for rent due at the time of the petition. The remedy of distress is of a paramount character, given to the landlord to vindicate his right without a resort to the courts. The act of 1836, ch. 192, enlarges the rights of the landlord and *prefers* him in certain cases *without the levy of a distress,* and this shows how favored the landlord is by the policy of the laws of this State. See also the act of 1826, ch. 266. The rent issues out of the land, and it is because of its possession that the

right of distress exists. Suppose the rent had been reserved in kind, could the trustee take it and sell it for the benefit of the insolvent's creditors? The remedy of distress is considered in the nature of a remedy upon the land. If the tenant be dead the goods of the deceased remaining upon the land may be distrained in the hands of the executor or administrator for rent accruing before and even after the death of the tenant. *Bradley on Distress,* in 1 *Law Lib.,* 48. 1 *Henry Bl. Rep.,* 465, *Braithwaite vs. Cooksey.* 7 *H. & J.,* 123, *Howard vs. Ramsay.* As early as the case of *Selby vs. Magruder,* 6 *H. & J.,* 454, the doctrine was announced that the priorities of creditors must exist at the time of the petition, because at that time the law asserts its right and the rights of creditors to be distributed to accordingly. So upon death the law asserts the rights of creditors and their priorities are fixed at that time. *Dorsey's Test Law,* 96. 6 *G. & J.,* 206, *State vs. Bank of Maryland.* And in the administration of the deceased's estate judgments and decrees have a priority over all other claims. The priorities in this case are just as strongly marked as those under the insolvent system. But still the goods and chattels of the deceased have never been considered in the custody of the law, in a sense that would protect them from the remedy of distress.

The rule of law which declares that the goods of a tenant cannot be distrained for rent, if in the custody of the law, seems to be when the property is taken into custody by some process of law or execution, where special property is created in third persons by the act of law. 1 *Law Lib.,* 49. In those cases the statute of 8*th Anne, ch.* 14, has provided the landlord with a remedy, and the sheriff is bound to retain for the rent upon notice. In the case of insolvency there is no special property vested in any one. But the property is vested in the trustee for the benefit of creditors generally, according to their legal priorities. But a commission of bankruptcy is not an execution within the meaning of the statute of *Anne.* 1 *Law Lib.,* 50. 2 *Term Rep.,* 601, *Buckley vs. Taylor.* 15 *East.,* 230, *Lee vs. Lopes.* The remedy for distress in arrear was not *affected* by any statute upon bankruptcy. 1 *Law Lib.,* 52.

The landlord may distrain so long as the goods remain upon the premises, notwithstanding the possession of the messenger and assignment by the commissioners, and even after a sale by the assignee. I *Law Lib.*, 53. 1 *Atk.*, 103, *Ex-parte Descharmes* and *Ex-parte Plummer. Ibid.*, 104, *Ex-parte Grove.* In this case, it is said, the property was sold, but this does not alter the case, the principle is the same.

It is clear that in bankruptcy the property of the tenant is not regarded as in the custody of the law, in a sense which protects it from the remedy of the landlord for his rent under a distress warrant. The proceeding in bankruptcy is not an execution; so the proceedings under the insolvent laws cannot be regarded in the nature of an execution. But it is said the cases of *Alexander vs. Ghiselin, Waters vs. Dashiell, Manahan vs. Sammon,* and *Jamison vs. Chesnut,* announce a different doctrine. But, with due submission, nothing can be drawn from the insolvent laws, as expounded by these decisions, which militates against the right of the landlord to pursue his remedy under a distress warrant for rent due at the time of the petition. They simply decide that all the insolvent's property passes into the hands of the trustee to be sold by him, and distributed by him amongst creditors according to their priorities. But there is nothing in those cases which would seem to deprive the landlord of his rent due at the time of the petition. In *Waters vs. Dashiell,* 1 *Md. Rep.*, 472, it is said: "Looking to the frame and design of our insolvent system, we cannot perceive that there is any material difference between it and the proceedings in bankruptcy, as *far as the title* to property so situated is concerned." The insolvent system may, in some respects, be more efficacious in the protection of the rights of creditors, but it is no part of its policy to deprive a landlord of his just and equitable right to his rent due at the time of the petition. If Snouffer had not petitioned for the benefit of the insolvent laws, there could be no question of the landlord's right in this case to distrain, although there were judgments against him. Does not the trustee take the property subject to the same right? Can it be that, by petitioning, a judgment creditor is, under the policy of the insolvent

system, made a lien creditor against personal property, and invested with a right superior to the landlord's right to his distress for rent, which was complete prior to the petition?

It is said the trustee, under any circumstances, was the only person authorised to sell the insolvent's property, and that after the distress warrant was levied the landlord could not sell. This cannot be. If the landlord had a right to seize the property under his warrant, his right to *sell* was clear; for otherwise his remedy would be imperfect and the rent would be lost.

Tuck, J., delivered the opinion of this court:

Whatever may be the law elsewhere, in this State when a debtor applied for the benefit of the insolvent laws under the act of 1805, ch. 110, and its supplements, his property came under the custody of the law, for the benefit of his creditors. *Alexander vs. Ghiselin*, 5 *Gill*, 138. *Waters vs. Dashiell*, 1 *Md. Rep.*, 455. And it being well settled that goods in the custody of the law are not liable to be distrained, it follows that the distress relied upon by the appellee cannot be sustained, the property at the time having been beyond its reach.

That a claim for rent is of peculiar character, and may be recovered in full, when other creditors of the tenant will be allowed a dividend only of his estate, cannot be denied. But we do not understand this to be in consequence of the rent being, *per se*, a lien on goods found on the premises. It is because the law allows the landlord to collect his rent by seizing the property as a pledge, to be dealt with according to its requirements. That it binds as a lien only when this legal right of distress has been exercised, is conceded by the appellee's argument, and the cases referred to show this to be the law. *Eden*, 304. *Bouvier's Bac. Abr.*, 695. In England the doctrine in cases of bankruptcy is different from the law in this State in cases under the insolvent system. According to their decisions the landlord is allowed a preference, although he distrains after the bankruptcy; but it is upon the ground that the proceedings do not place the property in *custodia legis*, as we hold the acts of insolvency do here. It follows, there-

fore, that if we are right in saying that under our acts of Assembly the insolvent's estate is placed in the hands of the law, the reason of the English rule is against allowing the appellee a preference. 1 *Atk.*, 102, 103, 104.

The legislation upon the subject indicates that rent was never considered as possessing the attributes of a lien. If so, why was it declared by the statute of *Anne* that sheriffs, levying executions, should satisfy one year's rent? If rent was a lien before the statute, the property passed to the sheriff, incumbered with the landlord's claim; and the plaintiff in the execution could have had satisfaction only after payment of the rent. Again, by our act of 1836, ch. 192, such demands, under certain limitations, are allowed priority in the administration of deceaseds' estates without a distress. Surely this act would not have been passed if it had been supposed that rent was already a lien or incumbrance. The act of 1826, ch. 266, does not, as we think, support the appellee's claim. It relates to removals of property "by the tenant, or by his order and direction," declaring certain removals to be clandestine, and does not, in terms or by intendment, affect titles acquired by insolvent trustees.

But we think the act of 1805, ch. 110, sec. 7, is decisive of the question. It gives priority to judgments, incumbrances and liens; but it declares also that no process against the property shall have any effect thereon, "except writs of *fi. fa.* actually and *bona fide* laid before the time of the application." Whether a distress for rent levied before that time is process within the intent of the act, does not arise on this appeal; nor would such a construction aid the appellee, because he made no such distress. The point is, whether, without a previous levy, the demand for rent, due at the time of the application, accompanied by a subsequent distress, followed the property as an incumbrance or lien into the hands of the trustee. The design of the law was to prevent creditors from acquiring liens after the application, and to deny preference to claims which had not become liens before. If a distress warrant be regarded as process, it is excluded by the last words of the section, having been levied too late; and if rent is not a lien or incumbrance,

the present claim is not protected by the previous clause. We consider this section as equivalent to a denial of the preference asserted on the part of the appellee.

We do not think that this view of the subject deprives the landlord of any peculiar right. The law has granted him a remedy enjoyed by no other class of creditors. If he fails, when entitled, to avail himself of it, he has no more reason to complain, if loss results, than has a judgment creditor who neglects to sue out his *fi. fa.* and have it laid before his debtor becomes an insolvent petitioner. As happens in other cases, the landlord here has lost his preference by delay, and we cannot relieve him without disregarding what we take to be well settled principles of law.

The order ratifying audit No. 2 must be reversed, and audit No. 1 ratified and confirmed, according to the case stated; but costs will not be allowed in this court.

*Order reversed.*

MASON, J., dissented and delivered the following opinion.

This case comes before us upon an agreed statement of facts, which in substance are as follows:

That John B. Snouffer, on the 3rd of August 1852, petitioned for the benefit of the insolvent laws; that A. T. Snouffer was appointed his trustee, accepted the trust and gave bond; that an order was passed by the circuit court to sell the property of the insolvent after giving notice, &c., upon terms, &c.; that the trustee did give the notice, &c., and on the 30th day of August 1852, sold all the property of the insolvent to Miller and Snouffer, &c.; that much of said property consisted in growing corn and wheat in the straw; the corn and wheat were not delivered to the purchasers, but remained upon the premises in the possession and under the control of said trustee; that said insolvent had rented the farm, where the wheat and corn was grown and where it was at the time of the distress, from Charles C. Tucker, under a written lease; that a year's rent was due on the 1st of July 1852, amounting to $958.05; that on the 1st of September 1852, the landlord, by his agent, by virtue of a warrant of distress, seized the property of the insolvent afore-

said, and actually sold the said *corn and wheat* to pay said sum of $958.05 rent, while said corn and wheat were on the said premises in the possession and under the control of said trustee, &c.

"It is further agreed, that if this *court shall be of opinion,* upon this statement and the proceedings of the case, that said Tucker, by Robert Boone, his agent, had no legal right to seize and distrain *and sell* the said property of the insolvent petitioner, as aforesaid stated, in the custody and possession of the said insolvent's trustee, under and by virtue of said distress warrant, to pay the full amount of said rent due to Tucker on the first day of July 1852, in exclusion of the judgment creditors of the insolvent petitioner, then, and in that case, the report No. 1 of Grayson Eichelberger, the special auditor, made in this case under the instructions of the counsel for the judgment creditors, shall, by the judgment of this court, be ratified and confirmed, and the report of said auditor No. 2 be rejected. But if this court, on the contrary, shall be of opinion that the said Tucker, by his agent, Robert Boone, had a legal right to seize, distrain *and sell* said property, by virtue of said distress warrant, which was in the custody and possession of the said trustee, as stated, and thereby obtain a priority of right over the judgment creditors, as claimed and shown by *report No.* 2 of said special auditor, that then said *auditor's report* No. 2, made under the instructions of the said trustee's counsel, shall be ratified and confirmed by the judgment of the court, and the auditor's report No. 1 rejected; and that either of the parties may appeal to the Court of Appeals of this State, from the judgment of this court, and all the proceedings on said judgment shall be staid until the determination of such appeal." This case was submitted to the circuit court upon the said statement of facts; and the said circuit court, on the 2nd day of June 1856, ordered and decreed, that in conformity to the written agreement of the counsel, the auditor's report, No. 2, in the case, be finally ratified and confirmed; and that the trustee pay out the funds as distributed therein.

It will be observed that audit No. 1, disallowed the claim for rent as a preferred debt against the insolvent's estate, while

audit No. 2, was based upon the theory, that the landlord's right to distrain and sell were not impaired by the insolvent's application, and accordingly it deducted from the assets in the hands of the trustee, the sum of $1588, being the amount of the sale under the distress for rent.

Subsequently, upon the argument in this court, the counsel entered into a supplemental agreement, the effect of which was to authorise this court to order a special audit, in the event of its appearing, that neither of the accounts stated below was based upon correct principles.

Independent of the supplemental agreement, I have no hesitation in saying, as my opinion, that while counsel can agree among themselves as to the particular facts to be submitted, and thus to confine the court to those facts in the opinion they are to pronounce, yet they cannot require the court, by any agreement into which they may enter, to draw any particular conclusions or deductions from those facts. The judicial mind must be left free to draw its own conclusions upon the law, as applied to the facts of each case, whether they be agreed upon, or elicited in the usual way, from evidence regularly offered. Hence it was not in the power of counsel in this case to confine the court to the adoption of either audit No. 1 or No. 2, if neither was deemed to rest upon sound legal principles; and, if the supplemental agreement was out of the way, I should still have had no difficulty in ordering such other account to be stated as would conform to our views, notwithstanding the original agreement sought to limit us to the two before us.

Upon the facts, as thus set forth, the first question which arises is, was the property, which was in the possession of the insolvent's trustee at the time it was seized under the distress, *in the custody of the law*?

It is an old and well settled rule of the common law, that goods already in the custody of the law cannot be distrained, and if the possession in this case, by the trustee, is the *custody of the law*, as the appellant contends, then the distress was clearly illegal, and all proceedings under it.

In England it has been settled, that a commission in bankruptcy does not prevent a landlord from distraining for rent;

"for this," the chancellor says, in *Ex-parte Grove*, 1 *Atkin's Chan. Rep.*, 104, "is not such a *custodia legis* as an execution is." See, also, the cases of *Ex-parte Plummer, ibid.*, 103. *Buckley vs. Taylor*, 2 *Durn. & East.*, 600. *Lee vs. Lopes*, 15 *East*, 230. *Bradley on Distress*, 81.

Our insolvent laws, in this particular, differ materially from the bankrupt system of England. The act of 1805, ch. 110, sec. 7, provides, that no *process* against the debtor's real or personal property, issued after his application, "shall have any effect thereon." In contemplation of this provision, a distress for rent is *a process*, and the purpose of the framers of the law was, to place the debtor's property, after his application, beyond the reach of every process or proceeding, including a distress for rent, by which one creditor could secure a preference over other creditors, not existing at the time of the application, except only property not embraced in the schedule, as provided for by the act of 1827, ch. 70, sec. 8. In this view, property held by an insolvent's trustee, may be regarded as *in the custody of the law*.. We have virtually so said before, in the case of *Waters vs. Dashiell*, 1 *Md. Rep.*, 471. The court in that case say: "Our insolvent system, while granting relief to the debtor, also protects the creditors to the full extent of the property to which they may look for satisfaction of their claims. This is done by taking all his property out of his possession and control, and placing it in *the hands of the law*, by the agency of a trustee." It has also been settled by a number of cases in this court, that the trustee in insolvency, is the proper and only party to sell and administer the insolvent's estate. When the estate passes to him, he takes it subject to all liens or priorities then existing, or which may afterwards be created against such portions of it as may not have been embraced in the schedule, under the provisions of the act of 1827, ch. 70, sec. 8, as construed in *Waters vs. Dashiell*. All inchoate titles, resulting from judgments, and other liens, are suspended and merged in the paramount title of the trustee, who is the representative of the rights and interests of all parties concerned in the estate. *Jamison vs. Chesnut*, 8 *Md. Rep.*, 34, and the cases there cited.

Upon the principles which have been laid down, and which we think are fully sustained by authority, it follows that the levying of the distress in this case, and the sale of the tenant's property by the landlord, after his application, were clearly illegal and void.

This leads to the second inquiry, that arises in this stage of the case, which is, whether *rent*, due at the time of the tenant's application for the insolvent laws, is such *a lien or incumbrance*, within the meaning of the 7th sec. of the act of 1805, ch. 110, as attaches to, and passes with the insolvent's property, to his trustee as a preferred debt?

This is a new question in the courts of Maryland, and one of important practical bearing, and no doubt one of frequent occurrence, in the business affairs of the community. The only explanation, it is supposed, that can be given, why the question has never been raised before in a court of justice is, that the public have acted uniformly upon the assumption, that the landlord's claim for rent was a preferred debt against an insolvent's estate: and this assumption I think is correct. The policy of the law seems always to have been, to invest the claim to rent with a peculiar and superior dignity and importance. It is one of the rare cases in which the law allows a man to be his own avenger without the aid of the process of a court. This right has been sacredly preserved from the earliest times, and by the statute of 8 *Anne, ch.* 14, *sec.* 1, (which statute is in force in this State,) the rights even of judgment and execution creditors, have been made subordinate to it. I cannot therefore agree, that a mere application for the benefit of the insolvent laws, should have the effect of defeating the claim for rent, which has always been regarded as resting upon such high grounds. All the analogies of the law, as well as the almost universal practice in Maryland, conflict with such a theory.

I learn, but pass no opinion upon the subject, that the practice in Baltimore has always been, even prior to the act of 1836, ch. 192, to regard rent as a lien upon the estate of deceased parties, and first to be paid, notwithstanding the provision of the act of 1798, ch. 101, sub-ch. 8, sec. 17, giving a

preference, in the settlement of such estates, to "judgments and decrees." This practice, whether right or wrong, is only referred to as affording evidence of the estimate usually placed upon the claim for rent, by the legal profession in Maryland.

The view thus taken is further strengthened by the act of 1826, ch. 266, making all removals of property liable for rent, *clandestine*, whether made by day or night, excepting only such property as shall "have been sold to a *bona fide* purchaser, without notice, or taken in execution." A title acquired by a trustee in insolvency will not defeat, it appears, the landlord's right to pursue property thus removed, and here is a clear recognition of the superior character of the claim to rent.

It is not necessary for us to say, that technically speaking, and for all and every purpose, *rent is a lien* upon the property of a tenant. I mean only to say, that it was not the purpose of the act of 1805, ch. 110, nor of any of its supplements, to defeat the priority of rent due, and that the language of the seventh section, preserving the priority of "all judgments, incumbrances and liens," must be taken as embracing *rent due.* In many books of high authority, rent is called, in express terms, *a lien on the bankrupt's goods.* In *Eden's Bankrupt Law*, 303, the eighth sec. of ch. 17 is headed, "Landlord's Lien for Rent." It is there said, "a landlord having a legal right to distrain goods, as long as they remain on the premises, neither the issuing the commission, nor the possession of the messenger, nor even the commissioner's assignment, will deprive him of his legal lien." So also in the case of *Dod vs. Saxby*, 2 *Strange*, 1024, the court speaks of rent as "*a lien.*" And again in the case of *Stevenson vs. Wood, 5 Esp. N. P. Cases*, 200, Lord Ellenborough said, that the landlord had "a legal lien on the bankrupt's goods, unconnected with the bankruptcy." And again in the case still more in point, *Ex-parte Plummer*, 1 *Atkyn's Chan. Rep.*, 103, the Lord Chancellor, (Hardwicke,) says: "I am of opinion that the landlord is entitled to distrain the goods remaining on the premises, for his whole rent, notwithstanding the commission of bankruptcy, and the proceedings thereon. There was a case before the Lords Commissioners of the Great Seal, where the land-

lord, though he had made no distress, yet was considered to be within the equity of the statute (of Anne) which gives him a year's rent upon execution." See also the case of *Duck vs. Braddyll*, 13 *Price*, 455, (6 *Eng. Exch'r Rep.*, 162.)

All the foregoing cases, being English cases, rest upon the principle, that goods held under a commission in bankruptcy, were not *in custodia legis*, but that a landlord could as well enforce *his lien* for rent, by distraining, after as before bankruptcy. But not so with the goods of an insolvent under our system, as we have already said, for they are in the custody of the law, and although a landlord has a lien for his rent, that lien is suspended by the tenant's application for the insolvent laws, and passes with the property into the hands of the trustee.

The suggestion, that because the landlord's right to distrain his tenant's goods, did not follow the goods when removed from the premises, therefore there could be no lien, has no especial force in it. There are many cases of special lien, arising out of the actual possession of personal property, as for example, a horse held for livery, clothes held for the cost of making them, and the like, where the lien is lost as soon as the possession is parted from. Yet they are not the less liens because they can thus easily be defeated. So the landlord's lien for rent is a special lien; continuing only so long as the right to distrain continues, unless that right is suspended by some operation of law, as in the case of an application in insolvency.

It is not necessary for us to say, whether or not the landlord's claim for rent, as against an insolvent's estate, is within the equity of the statute of Anne. The analogies of the statute are in strong support of the principles which have been announced as governing this case, but I do not say that it is embraced within the equitable provisions of that statute. If made applicable to cases like the present, that statute would require a trustee in insolvency to pay a year's rent in arrears, before he could remove the insolvent's property, provided the landlord should serve notice upon the trustee, (in pursuance of a decision upon the statute, made in the case of *Waring vs. Dewberry*, 1 *Strange*, 97,) of the amount of rent due. Nei-

ther of the above requirements of the statute of Anne is necessary to be observed in cases of rent due by an insolvent. The claim for rent passes with the property to the trustee, as all other liens, to be established upon the usual notice given by the trustee to creditors to file their claims.    When once established by legal proof, as other debts are proved, it is to be paid as a preferred debt, in this case, over all other debts and incumbrances existing against the estate: the fund being still under the control of the trustee, as appears from the record, this can readily be done.

In accordance with the views expressed in this opinion, I would reverse the order of the circuit court, which legalized the distress and the sale under it, and refer the case to a special auditor, in pursuance of the agreement of counsel, with directions to state another account between the trustee and creditors, allowing and preferring the landlord's claim for rent, but disallowing the costs and expenses of the proceedings under the distress.