(Decided June 26th, 1861.)

---

## James Phelps and others, *vs.* John Stewart.

Where the papers in a cause are transmitted from the chancery office to a circuit court, under the Acts of 1854, ch. 149, and 1856, ch. 132, it must be proceeded in as if it had not been removed; it is the same cause be-tween the same parties, and the law imputes to them knowledge of the transmission and all subsequent proceedings, as if the papers had re-mained in the chancery office.

The *jurisdiction* of the court of chancery and county courts, as courts of equity, *in cases of partition,* where the land is situate in one county only, is too well established *by practice* to be disturbed.

The proceedings may be by an *ex-parte* petition, or by bill and answer, but in both cases they must conform to the requirements of the descent laws.

Where the proceedings are by bill and answer, according to the usual course of the court, the sale may be made by a trustee of the court's appointment; such is the well established *practice.*

The Act of 1820, ch. 191, sec. 27, expressly requires the widow's dower to be laid off *before* partition amongst the heirs, unless a sale be had with her assent, as provided by sec. 28, and the failure of the commissioners so to lay off her dower, is a fatal objection to their return.

The commission should set forth this as a part of the duty of the commis-sioners, and they must perform it where there is a widow, and so make known in their return.

Upon appeal from a decree for sale in a case *for partition,* the previous *order* ratifying *the return* of the commissioners is open for review, though no appeal therefrom was taken or prayed.

Such order is, in its nature, interlocutory, a part of the preliminary proceedings leading to the decree of sale, which is, according to the true construction of the Acts of 1830, ch. 185, 1841, ch. 11, and 1845, ch. 367, open for review upon appeal from the decree of sale.   '

APPEAL from the Equity Side of the Circuit Court for Anne Arundel county.

This bill was filed on the 4th of June 1849, in the court of chancery, by the appellee, as permanent trustee of Ebenezer T. Phelps, an insolvent debtor, against the appellants, the other six heirs of James Phelps, deceased, for the partition of the real estate of said James, consisting of about seven hundred acres of land, lying in Anne Arundel county, alleging that it was for the common interest that the land should be sold, or if it should be proved susceptible of division, that it ought to be divided, and the complainant admitted to the possession of his one-seventh part.

The infant defendants answered by guardian, and the four adult defendants answer consenting to a partition, and averring that said lands are susceptible of an advantageous division among all the parties entitled, and two of them state that the said James left a widow, who is entitled to dower therein.

A decree for partition was passed by the chancellor on the 11th of June 1852, in the usual terms, requiring the commissioners to divide the land into seven equal parts, if capable of being so divided advantageously, if not, into so many parts as it can be advantageously divided, and if it will not admit of division without loss or injury to the parties, then that they make return of their said judgment, and the reasons upon which the same is founded. A commission was issued from the chancery court on the 13th of December 1853, to certain commissioners to make said partition, and before their return, to wit, on the 18th of May 1854, the papers in the case were transmitted to the circuit court for Anne Arundel county, by "Louis Gassaway, keeper of the records of the court of chancery."

On the 18th of March 1858, the commissioners made their return to the said circuit court, in which they state that the

land could not be advantageously divided into seven parts, but that it could be advantageously divided into four parts, and they directed the surveyor so to divide it, which was accordingly done. These four parts are of unequal value, and "*all subject to the incumbrance of the widow's dower.*"

On the 16th of June 1858, the complainant filed a petition in the circuit court, stating that the parties had right, in due order of seniority, to elect to take their parcels of this partition, and that in the event of no election being made, the lands ought to be sold under the direction of this court, and praying that they might be required to do so, and that the return may be assigned for hearing during the next term of the court. On this petition the court, (BREWER, J.,) on the 21st of June 1858, passed the following order: "By the rules of court, the return of the commissioners is required to be in court one entire term before it can be confirmed, and in this case, if it be confirmed at July term, by the 9th sec. of the Act of 1820, ch. 191, referred to, the parties interested must make their election before the ensuing term. This case, as to the confirmation of the report, will be for hearing, without special order, at July term. By special order, it might have been confirmed sooner, but there is no time now."

Afterwards, at the July term of said court, to wit, on the 21st of July 1858, the judge passed an order *ratifying* and *confirming* the return of the commissioners, and further ordered, "that unless the parties of age, in due order of seniority, or some of them, do, on or before the third Monday of October next, make their election to take the several lots described in said return, the court will, on that day, proceed to decree a sale of said lots, or such of them as shall not have been taken by said parties, or pass such other order in the premises as may appear proper."

Afterwards, on the 15th of December 1858, none of the parties having made their election, pursuant to said order of the 21st of July 1858, the court passed a decree for the sale of the whole of said land, and appointed F. H. Stockett, trustee, to make said sale in the usual form.

On the 29th of January 1859, William Phelps, one of the

30    v.17

defendants, filed his petition, alleging that for the first time he has seen, by the advertisement of the sale, that a decree had been passed in this case for a sale of said real estate; that he believes his brothers and sisters also were ignorant of such decree, and of any and all of the proceedings looking to such a decree, until they saw the advertisement of it; that they intended to elect to take the parcels of land, but that the petitioner did not know or have any notice, and he believes none of the other parties had any such knowledge or notice of the course of said proceedings, or that it was time for him to make his election, and he now tenders to take a part by election; that the decree was obtained against him and, as he believes, against his co-defendants by surprise, without notice or knowledge of any of the proceedings to sell the said land, and through ignorance on their part of their rights; that his solicitor in the chancery court was not aware of the proceedings in the circuit court until he saw the advertisement of the trustee of the sale. In consideration whereof he prays that the decree may be opened, and he allowed to elect.

The complainant answered this petition, denying that the petitioner can ask for a modification or opening of the decree, for the reasons stated in his petition, as the term at which the decree passed has closed, and it is now enrolled; that the petitioner has no reason whatever to complain of the decree upon the ground of ignorance or surprise, &c.

On this petition the court (Brewer, J.) delivered the following opinion, upon passing its order dismissing the same.

"A petition was filed on the 29th inst., by William Phelps, one of the defendants in this case, to set aside and annul a decree passed therein, on the 13th of December last, for the sale of the real estate for the purpose of partition. The reasons assigned are, that it was a surprise on the defendants, that they were ignorant of the proceedings for a sale, and of their right to elect, and that the petitioner desires to make his election, and believes that the other parties do.

"The commission to divide was returned on the 18th of March 1858, dividing the land into a number of parts less than the number of heirs, and the parties had a right to elect

in regular order. On the 16th of June, the complainant filed a petition praying that an order might be passed requiring the parties to elect. This, by order of the 21st of June, the court declined to do, the commission and return not having been in court for one full term, but on the 21st of July, the term being out, the court passed an order requiring the parties to elect, which not being done, the decree for a sale was passed.

"How this could have been a surprise on the parties, I cannot conceive. The ignorance of the parties of their rights, and of the proceedings for a sale, afford no ground for setting aside the decree. The parties are bound both to know their rights, and the proceedings in a cause to which they were parties, and to which they ought to have attended, having had ample time to do so. They can attribute the passage of the decree to their negligence only. William Phelps, however, is the only party applying to set aside the decree, and there are several others entitled to elect before him.

"I do not think the court has power to set aside this decree on petition (the term at which it passed having elapsed) if it had the disposition to do so. But it has not, for the reasons before stated, and because it thinks justice will be done to all parties more effectually by a sale than by an election. An actual sale will be a fairer test of the value than an appraisement. The infants will get the full value of their shares, and those of the adult heirs who desire any portion of the land, may get it by giving as much as any other person will. The court has no power over the decree on this petition, but it can direct the trustee to sell the land in the parcels required by the petitioner and other parties, if he can do so with justice to all the parties."

The court then, on the 31st of January 1859, passed an order dismissing this petition with costs, and from *this order* and *the decree of the 15th of December* 1858, the defendants, on the 1st of February 1859, appealed.

The cause was argued before LE GRAND, C. J., TUCK. BARTOL and GOLDSBOROUGH, J.

*A. Randall,* for the appellants:

1st. Under the peculiar circumstances of this case the court ought to have allowed the decree for the sale to be open, and the heirs at law to elect to take parts of the land. This right of election is a valuable right, firmly secured to heirs at law by our Acts of Assembly, and is one of which they cannot be deprived, or the land sold without their assent. See *Acts of* 1786, *ch.* 45, *secs.* 8, 9. 1797, *ch.* 114, *sec.* 6. 1820, *ch.* 191, *secs.* 9, 30, 31. *Alex. Ch. Pr.,* 166, 168, 170, 331. 2 *Har. Ent.,* 42. 11 *G. & J.,* 255, *Chaney & Wife vs. Tipton.* It is said this decree cannot be opened and this right secured, because the facts disclosed in the petition do not furnish sufficient grounds for such action. The petition alleges that the defendants had no notice of the proceedings in the circuit court, after the cause was removed from the court of chancery, till they saw the advertisement of the sale. Now the Constitution, (*Art.* 4, *sec.* 23,) and the Acts of 1854, ch. 149, and 1856, ch. 132, authorise the removal of such cases only as are "*undisposed of and unfinished,*" and it may well be doubted whether this case comes within the purview of these provisions, inasmuch as it had been closed in the chancery court by the decree for partition. But, at any rate, when it was removed, any further proceedings therein in the circuit court, should have only been upon *notice* to the parties. This notice, the partition avers, was not given to them, and also that their solicitor in the chancery court, was unaware of any such further proceedings. In view of these peculiar circumstances, it is submitted, that a proper case is made for opening the decree, and that the proper proceeding was *by petition,* even though after the lapse of the term at which the decree was passed. It makes out as strong a case as any of those decided by this court in which such relief has been granted. See 11 *G. & J.,* 137, *Oliver vs. Palmer & Hamilton.* 1 *Md. Ch. Dec.,* 23, *Barry vs. Barry.* 3 *Md. Ch. Dec.,* 228, *Stewart vs. Beard.* 12 *Md. Rep.,* 144, *Tabler vs. Castle.*

2nd. But the decree was wrong and fatally defective in another particular. It directs the sale to be made by a trus-

tee, and he one of the solicitors of the complainant, whereas the Acts of Assembly give no power to the court to appoint a trustee to sell the land. The power to make sale, if it is to be made, is to be by the commissioners. The Acts of 1786, ch. 45, sec. 8, and 1820, ch. 191, secs. 9, 23, 24, expressly declare that the estate, in case it cannot be advantageously divided, or there be no election, *"shall be sold by the said commissioners or a majority of them."* It is said, in reply to this, that the *practice* has been otherwise, and that courts of equity have appointed trustees to make the sale. But it is submitted, that this court cannot be governed by the *practice* of inferior courts in this respect. In the case of *Swan vs. Dent*, 2 *Md. Ch. Dec.*, 118, the chancellor passed a decree vacating a conveyance made by an insolvent debtor, and appointing a *trustee to make* the sale, and a similar proceeding was had in the case of *Hurt vs. Stull*, 4 *Md. Ch. Dec.*, 391, where it was held that *the trustee* appointed by the chancellor was bound to execute the decree for sale, notwithstanding the proceedings in insolvency. This was the long established practice of the court of chancery, and yet it was overruled by this court in the cases of *Jamison vs. Chesnut*, 8 *Md. Rep.*, 34, and *Purviance vs. Glenn*, 8 *Md. Rep.*, 206. And moreover, in the case of *Bennett vs. Bennett*, 5 *Gill*, 467, it was decided that, where the lands are situated in different counties, an application for partition may be made to the court of chancery, "but whether a case of this description be in chancery or a county court, *the proceedings must, in all respects, be in conformity to the provisions of the Act of* 1820, *ch.* 191," and because the proceedings in that case were not in conformity to the provisions of that law, the decree was reversed.

*F. H. Stockett* and *Thos. S. Alexander* for the appellee:

1st. There is no merit in the application to open the decree. The cause was properly removed from the court of chancery to the circuit court, under the provisions of the Constitution and Acts of Assembly referred to on the other side, and the parties were bound to take notice of such *removal* of

the return of the commissioners, and all proceedings had in that court, as well as to know of their right to elect. The cause, when removed, was to be *proceeded in* as if no removal had taken place. 8 *Md. Rep.*, 322, *Brown vs. Gilmor.* 11 *Md. Rep.*, 41, *Dugan vs. Hollins.* Regarding the application as made in the proper form, it was still a matter addressed to the sound discretion of the court below, and the case presented for the exercise of that discretion was not as strong as that in the case of *Burch vs. Scott*, 1 *G. & J.*, 393, where the application was refused. The petitioner will have an opportunity of purchasing any lot at the sale to be made under the decree, for its fair value, and no possible injury can be done him by refusing this application. Infants are also parties, and their interests will be the better promoted by the refusal to enlarge the time for election.

2nd. The decree is not liable to the objection urged upon the other side. When the application for partition is *ex-parte* and on the *law side* of the court, the sale must be made by the commissioners, but when a *bill* is filed in an equity court, and answers required according to the usual course of the court, it becomes a proceeding *inter partes*, and the court, as a court of equity, has *jurisdiction* and proceeds to make the sale by a trustee of its own appointment, and distributes the fund amongst the parties entitled in the same manner as in any other case properly within its jurisdiction. Such has been the *practice* of courts of equity in this State for more than *forty years;* it has never before been questioned. 1 *Bland,* 456, *Wells vs. Roloson.* 3 *Bland,* 184, *Hewitt's case.* 6 *Md. Rep.*, 435, *Haines vs. Haines.* This long and uninterrupted practice it is too late now to question. The Act of 1763, ch. 23, the court said, in the case of *Shafer vs. Stonebraker,* 4 *G. & J.*, 353, might be considered, if it were then for the first time to receive a judicial exposition, as interdicting altogether the use of special demurrers, yet the question is not now open: "the practice of sustaining special demurrers by every judicial tribunal in the State, hath engrafted upon this Act of 1763, an interpretation *which nothing but an Act of Assembly can change.*" The same thing

may be said of the practice now invoked in behalf of this decree.

Tuck, J., delivered the opinion of this court.

We do not think that the appellants have assigned sufficient reason for reversing the order of the 31st of January 1859, dismissing this petition.

When the papers in a cause are transmitted from the chancery office to a circuit court, sitting in equity, under the Acts of 1854, ch. 149, and 1856, ch. 132, it must be proceeded in as if it had not been removed. This was the rule applicable to cases removed from the county courts to the court of chancery, and the same reason applies here. *Brown vs. Gilmor*, 8 *Md. Rep.*, 322. *Dugan vs. Hollins*, 11 *Md. Rep.*, 41. Considered as the same cause between the same parties, the law imputes to them knowledge of the transmission, and likewise of all subsequent proceedings, as if the papers had remained in the chancery office. On application to the proper officer the appellants might have known that the cause had come under another jurisdiction, and by following and noticing the proceedings have avoided their present predicament.

We concur with the court below without passing any opinion upon the manner in which this question is presented, that point having been waived by the appellee's counsel. But an appeal was taken, also, from the decree of December 15th, 1858, which makes it our duty to examine further into the record, and to notice other points urged in behalf of the appellants.

However the practice may have originated, the jurisdiction of the court of chancery and county courts, as courts of equity, in cases of partition, where the land is situate in one county only, is too well established to be disturbed. Under the Act of 1786, ch. 45, instances occurred in chancery, and many more in both courts since the Act of 1820, ch. 191. The proceedings may be by *ex-parte* petition, or by bill and answer, but in both they must conform to the requirements of the descent laws, and decrees have been reversed

for error in this respect. *Corse vs. Polk*, 1 *Bland*, 233, note. *Howard's case*, 1 *Bland*, 366. *Hewitt's case*, 3 *Bland*, 186. *Warfield vs. Warfield*, 5 *H. & J.*, 459. *Roser vs. Slade*, 3 *Md. Ch. Dec.*, 91. *Wilhelm vs. Wilhelm*, 4 *Md. Ch. Dec.*, 330. *Chaney vs. Tipton*, 11 *G. & J.*, 253. *Tomlinson vs. McKaig*, 5 *Gill*, 256. *Bennett vs. Bennett*, 5 *Gill*, 463.

Many cases also show, that where the proceedings are by bill and answer, according to the usual course of the court, sales have been made by trustees instead of commissioners, and without objection in the Court of Appeals, although the decrees might have been reversed, if erroneous, on that ground. The cases of *Jamison vs. Chesnut*, 8 *Md. Rep.*, 34, and *Purviance vs. Glenn*, 8 *Md. Rep.*, 206, do not apply here, if considered with reference to the reasons assigned. Those decisions were made in accordance with what this court understood to be the principle of the case of *Alexander vs. Ghiselin*, 5 *Gill*, 138, to the end that insolvents' estates may be settled by one trustee under the appointment and control of one court, and thereby avoid contests with the officers of other courts, and possible conflict among the courts themselves. Here there can be no such result, because whether the sale be made by a trustee or commissioners, the same tribunal must direct the distribution of the fund.

But we think there was error in the proceedings in other respects, for which they must be remanded, under the Act of 1832, ch. 302. The answer of two of the defendants shows that James Phelps, the ancestor, left a widow. The Act of 1820, ch. 191, sec. 27, expressly requires the dower to be laid off and assigned before partition among the heirs, unless a sale be had, with her assent, as provided by the 28th sec. Here the commissioners divided the land into several parts, and made all of them subject to the incumbrance of the widow's dower. It is quite manifest that this may operate against her interests if she should desire to have her dower assigned, and be compelled to claim it in the hands of several purchasers, whilst the heirs might be prejudiced by a sale of the land in parcels, each charged with its proportion of the dower.

The commission should set forth this as part of the duty of the commissioners, and they must perform it where there is a widow, and so make known to the court in their return.  1 *Bland*, 46.    *Md. Ch. Pr.*, 329.

The proceedings being defective in this respect, it follows that the court erred in ratifying the return and ordering a sale.    To have a new partition and assignment of dower, the commission should be remanded to the commissioners, on the return of which the heirs will have the right to elect, and to this end the cause will be sent back to be proceeded with according to the views here expressed.    The costs will be paid by the estate.                          *Cause remanded.*

On the 6th of June 1861, the appellee, by his counsel, *F. H. Stockett*, moved to affirm the cause absolutely, and countermand the transmission of the record to the court below, upon the ground that the appeal was taken on the 1st of February .1859, by the defendants below, from the decree of the 15th of December 1858, and the order of the 31st of January 1859, dismissing the petition of one of the defendants, desiring that said decree should be opened; that in the opinion of this court both the decree and order *are sustained* but the cause was remanded by reason of error in the *return* of the commissioners, which had been *finally ratified*, on the 21st of July 1858, from which order of ratification *no appeal* was taken by the defendants or complaint alleged at any time, and the appellee submits that under the circumstances of this case, the defendants are concluded by that order, *not having appealed from it*.    On this motion—

BARTOL, J., delivered the opinion of this court:

Upon consideration of the motion filed in this cause by the appellee, on the 6th day of June, this court adhere to the opinion heretofore expressed, and therefore, overrule the motion.

By the first section of the Act of 1830, ch. 185, it is provided that, "upon appeal from a final decree, or order in the nature of a final decree, within the time limited by law for

such appeals, all previous orders and decrees passed in the cause, shall be open in the appellate court in the same manner as if such previous orders or decrees had been as heretofore appealed from, within nine months from the time of the passing of the same."

This Act has been several times before this court and the former Court of Appeals for construction. In the case of *Dugan vs. Gittings*, 3 *Gill*, 153, the court say:

"The language of the Act has been made so comprehensive, as to embrace *all* orders or decrees, whether they are matured decrees professing to establish all the rights in controversy between the parties, as in the case of *Strike vs. McDonald*, 2 *H. & G.*, 260, or mere interlocutory and preparatory orders, as in the case of *Snowden vs. Dorsey*, 6 *H. & J.*, 114."

In the same case it was decided, that this provision of the Act of 1830 was not repealed by the Act of 1841, ch. 11.

By the Act of 1845, ch. 367, sec. 3, the same right is saved to an appellant, which before existed, of having all previous orders and decrees passed in a cause, open for review, on an appeal from the final decree.

Before the decision of the case of *Dugan vs. Gittings*, the late Court of Appeals was called on to construe the Act of 1830, in the case of *Porter vs. Askew*, 11 *G. & J.*, 346, in which a bill was filed to have certain lands sold for partition among alleged tenants in common, the same being incapable of division *in specie*. A decree for sale was passed on the 15th of May 1835, which was executed, and on the 15th of April 1839, an order was passed, confirming the account of the auditor; from which last order an appeal was taken, and the court decided, that the decree of the 15th of May 1835 was not open for review upon that appeal. Although that decision would seem to be in conflict with the general language employed by the court in the case of *Dugan vs. Gittings*, before cited, we adhere to the decision in *Porter vs. Askew*, and are of opinion that the court properly refused to examine into the validity of the original decree in that case.

The case before us, however, does not, in our opinion, fall within the decision of *Porter vs. Askew*.

In this case, the error in the proceedings of the circuit court was in the order of the 21st of July 1858, ratifying the commissioners' report. That order was, in its nature, interlocutory—a part of the preliminary proceedings leading to the decree of sale, which, according to our construction of the Acts of 1830, 1841, and 1845, before referred to, was before us for review on this appeal, although no appeal therefrom had been taken or prayed. See *Stem & Wife vs. Cox*, 16 *Md. Rep.*, 534.

*Motion overruled.*

(Decided Sept. 20th, 1861.)