## Case No. 499.

### In re APPOLD.

[25 Leg. Int. 180;[1] 1 N. B. R. 621, (Quarto. 178;) 7 Amer. Law. Reg. (U. S.) 624; 6 Phila. 469; 1 Amer. Law T. Rep. Bankr. 83.]

District Court, E. D. Pennsylvania. May 11, 1868.

BANKRUPT LAW — CONSTITUTIONALITY — UNIFORM OPERATION—POWERS OF ASSIGNEE—RENT.

1. So far as conformity in the procedure under executions out of the federal courts, and

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Reprinted from 25 Leg. Int. 18, by permission.]

out of the courts of the respective states, had been attained under the act of congress of 12th May, 1828, and the rules of practice in the federal courts, which, under the authority conferred by that act, had, from time to time, been adopted before the present bankrupt law was passed—the constitutional requirement that the system of bankruptcy should be uniform throughout the United States has been fulfilled if the bankrupt law operates uniformly upon whatever would have been liable to execution if no such law had been passed, though the subjects of its operation may not be in all respects the same in every one of the states.

2. Quaere, whether under the present bankrupt law of the United States, goods of the estate in the hands of the assignee are distrainable for rent?

3. If they are not, it is because they are not less in legal custody than goods taken in execution; and under the equity of any laws of the respective states which, like the English statute 8 Anne c. 14, entitle a landlord to payment of rent accrued, not exceeding one year's, out of the proceeds of goods sold under an execution, the landlord, who is prevented from distraining may demand such an amount of rent from the assignee in bankruptcy.

[Cited in Re Trim, Case No. 14,174; Re Hufnagle, Id. 6,837.]

4. Such a rule of decision is not inconsistent with apparently contrary decisions under the English system of bankruptcy.

[Cited in Re Trim, Case No. 14,174.]

5. Though rent, as such, may not accrue during the proceedings in bankruptcy, an equal charge for storage may, for a certain period, under certain circumstances, be incurred by the assignee.

In bankruptcy. On 1st May, 1868, Register Slaymaker certified the following questions, agreed to by the assignee of the bankrupt [Benjamin F. Appold] and the attorney of the bankrupt's landlord: The room, in which the bankrupt had conducted his business of a grocer, was leased to him at $62.50 per quarter. On January 24, 1868, the day appointed by the assignee for the sale of the goods of the estate on the premises, a bailiff of the landlord appeared, and by virtue of a warrant from him, distrained the goods for $125, due for two quarters rent. The bailiff did not sell the property, but it was agreed by and between the principal and the assignee, that the latter should make the sale and that the proceeds "in his hands should remain subject to the claim of the landlord just as the goods then were." The assignee made the sale and received the proceeds. In his account, as audited before the register, immediately following the statement of the balance for distribution, was a memorandum, that this balance was subject to such rights as the landlord of the bankrupt might have obtained by virtue of the levy made by his bailiff, and of the agreement made as above by the assignee. The questions presented were, 1st. Is the landlord entitled to take out of the balance in the hands of the assignee the sum of $125 due to him by the bankrupt for rent? and 2d. Has the register authority to direct or sanction the payment of this sum to the landlord by the assignee out of the balance in his hands as shown by the account.

CADWALADER, District Judge. Under the present system of bankruptcy in the United States the estate in the hands of the assignee is more determinately in legal custody than under the English system. There is, therefore, I think, reason to doubt the applicability of the English decisions that a landlord's right to distrain continues after an assignment under the bankruptcy of his tenant. [See note at end of case.] But if these authorities are inapplicable, it does not follow that the so-called lien of a landlord for rent should be wholly disallowed. The proceedings in bankruptcy may then have the effect of a statutory execution so that the case of the bankrupt's landlord may be within the equity of any laws of the respective states which entitle a landlord to payment out of the proceeds of goods taken in execution. The Pennsylvania statute, following the English act of 8 Anne, c. 14, entitles him thus to receive an amount not exceeding a year's rent. Blackstone's opinion, (2 Comm. 487,) that the landlord was thus entitled to the benefit of the analogy of the statute of 8 Anne where he omitted to distrain, has been overruled in England only because the goods late of the bankrupt on the demised premises are distrainable in England notwithstanding the assignment in bankruptcy. Otherwise the case would be within the equity of the statute. This conclusion may be reached without any necessity for considering the rent as a lien properly so called. Under the Maryland insolvent law it has been decided that the property of an applicant for the benefit of that act is in the custody of the law and cannot be distrained, and also that, without a previous distress, the landlord has no recourse against the estate. The latter part of this decision depends upon the local statute law. The statute 8 Anne, it is true, is in force in that state; but certain state laws are cited as controlling the decision there. [Buckey v. Snouffer,] 10 Md. 156.

Where the landlord makes a demand upon the assignee before the removal of the goods for an amount not exceeding a year's rent, it should, I think, if unpaid, be admitted as entitled to priority of payment whether the right of distraining exists or not. Where more than a year's rent is demanded, the question of the existence of the right of distraining will arise. At present I intimate no opinion upon this point. The claim is allowed under the alternative view of the law which I have explained. In cases in which assignees in good faith keep the stock in trade of a bankrupt in his former place of business for the purpose of either economical storage or advantageous disposal, if there is no improper delay, the hire of the landlord's premises may often be fairly valued by the standard of the former rent. In

such cases I have not hesitated to allow him an amount equal to accruing rent. The cost of storage elsewhere would equitably be considered a lien.

The first question of the register is therefore answered affirmatively. The landlord's claim is allowed, but without any costs of a distress.

Upon the second question I am of opinion that the register, if the assignee had paid the amount, would have been warranted in allowing him credit for it in the audit of the account under the 27th section of the act of congress, at the second meeting of creditors. The allowance. as any other one, would then of course have been subject to exception. But I am of opinion that a prospective payment could not have been regularly sanctioned by the register unless there had been a special reference of the question to him by the court. Even then his allowance would have been subject to exception. In all cases however he may refer any such question incidentally to the court. as he has done in this instance. I understand that the questions here certified have arisen at a second meeting of creditors. The sum of $125 will be deducted by the register from the nett amount in the hands of the assignee after all proper charges have been allowed. The register's own account will be settled with the assignee, and the excess or deficiency of the deposit of $50 accounted for between them. The nett amount will be reported for a dividend, after which the distribution of it will be reported according to form No. 32, appended to the general order of the supreme court. The remarks in the last paragraph are made in answer to inquiries by the register in a letter to the clerk.

Recurring to the main point in question it may be added that the bankrupt law of 1867, does not, in general, vest in the assignee any more beneficial interest in the debtor's estate than his execution creditors could, under the laws of the respective states already in force have obtained under adversary proceedings. General conformity of procedure in this respect in the federal courts, and in those of the several states, had been previously attained through the act of congress of 19 May, 1828, (4 Stat. 281,) and the rules and practice of the federal courts adopted from time to time, under the authority conferred by this act. The system of bankruptcy is, in a relative sense, uniform throughout the United States when it operates uniformly upon whatever would thus have been available to the recourse of execution creditors if the bankrupt law had not been enacted. My views to this effect have been explained in a former opinion. The assignee in bankruptcy will, in the present case, obtain what would have been obtainable for the benefit of an execution creditor under the law of Pennsylvania. That less or more may perhaps be obtainable in another state does not prevent the operation of the bankrupt law from being, in a constitutional sense, uniform.

NOTE, [from original report.] In a case of involuntary bankruptcy there certainly can be no distress while the estate is in custody of the marshal as messenger; and the assignee succeeds to this custody. In the case of the estate of Samuel C. Brown, [unreported,] an involuntary bankrupt, (21 October, 1867,) this court was of opinion that rent might be paid by the assignees on the same footing as under an execution, and that an equal amount as accruing storage might be paid in addition so long as the assignee should necessarily occupy the premises. In a previous case of the estate of Jeremiah M. Gale, also an involuntary bankrupt, the landlord of the bankrupt commenced summary proceedings before an alderman to recover possession of the demised premises under the Pennsylvania statute of 25th March, 1825. Upon the petition of the assignee showing that his dispossession would be injurious to the interests of the creditors, he was, on the 19th August, 1867, authorized by this court [unreported] to pay the rent, or if not in funds, to give security under the Pennsylvania statute. In this case it was desirable that the lease, fixtures and good will should be sold with the late stock in trade of the bankrupt. In case of Schell, Berger & Co., voluntary bankrupts, a provisional receiver had been appointed after the adjudication of bankruptcy and before the first meeting of creditors. He was afterwards elected assignee. But before he thus became assignee, an order upon him as receiver to pay rent was made, on 16th March, 1868, [unreported,] upon the landlord's petition, showing that funds were in hand which ought to be thus applied. The receiver certified that in his belief the landlord's claim was correct.

[No opinions can be found in the unreported cases cited in this note.]