## Case No. 14,174.

In re TRIM. Ex parte MARSHALL. In re PURCELL. Ex parte WAGNER. BOWMAN v. WAGNER et al.

[2 Hughes, 355;[1] 5 N. B. R. 23.]

District Court, D. South Carolina. 1871.

LANDLORD AND TENANT—LIEN FOR RENT—MILITARY ORDER—BANKRUPTCY.

1. A landlord has a lien in the state of South Carolina on the personal property of the tenant, which is good for one year as against execution and other creditors.

[Cited in Bailey v Loeb. Case No. 739.]

2. Under the statute of Anne, a landlord has a secured lien for his rent in the state of South Carolina, and that law is still in force, not having been repealed by the military order of General Sickles.

3. An assignee in bankruptcy is bound to respect the landlord's lien for rent.

[These were several proceedings in bankruptcy, entitled respectively: In re W. J. Trim; Ex parte E. W. Marshall. Agent; In re Purcell; Ex parte T. D. Wagner; and E. M. Bowman against T. D. Wagner and others.]

BRYAN, District Judge. The same question in all these cases was submitted to and reported upon by the register in bankruptcy and a special referee. Exceptions were filed to the reports, and the cases are before me

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

on these exceptions. I shall, for convenience, confine the discussion to one case, that of Ex parte Wagner, the decision of which will apply to the others.

After protracted deliberation and a thorough examination of all the authorities bearing on this issue, English and American cases, with the benefit of exhaustive arguments by counsel of the first ability and learning in this case and others, I have come to the conclusion opposed to that of the referee in this case, himself so greatly distinguished for learning, experience, and ability, and feel compelled to overrule his judgment. My mind is satisfied with the reasoning of the chief justice in the analogous Case of Wynne [Case No. 18,117]. I accept his ruling as ascertaining the meaning of the word "lien." "Whenever the law gives a creditor a right to have a debt satisfied from the proceeds of property, or before the property can be otherwise disposed of it gives a lien on such property to secure the payment of this debt." And in the language of the chief justice, in the same case, "I think a lien of this sort" is given by the statute of 8 Anne, c. 14 (Pub. Laws, p. 97), of force in this state. This lien is not dependent on a distress warrant or an execution. The charge on the property or the proceeds of the property is a charge because by the statute, where there is an execution, the charge is paramount to the levy itself. It ranks the levy. The very fact that it is paramount to the levy proves that it is a lien. It is not necessary that in point of fact there should be an execution. But if there were, in the language of the chief justice, "would it not be trifling with the plain sense of words" to say that "the claim which by law is made superior to the lien, is itself not a lien?" The statute creates a lien, not the execution. It creates a charge upon the property which excludes even an execution. The lien, so far from being credited by the execution, ousts it. If it had not a previous existence, how could this be? The property then in the hands of an assignee is in the hands of the law, as much so as if in the possession of the sheriff, and to be disposed of subject to this charge, and against all other liens, the highest possible lien being a levy which is the consummation or execution of an execution.

The parties to this contract entered into it with remedy of distress at common law, and the lien upon the proceeds of personal property upon the premises, upon sale by execution by the sheriff, for the payment of the rent, as an essential part of the contract. The landlord put his property in possession of the tenant, with an anticipative execution in his hands, as security for his rent when due, and the protection against any other levy by the statute of Anne, to the extent of one year's rent. He might neglect or waive his rights at common law, or under the statute, but on the conditions and under the circumstances prescribed by the common law and the statute, the protection was prompt, in his own power, and so sufficient and prevailing as to be paramount to an execution upon a hostile 'process. Let it be remembered that the landlord begins as to his debt where other creditors end; he has the consummation of a judgment put into his hands, an execution for the security .and payment of his debt before suit. In other, words he has a right to do before suit, as to all personal property (unless specially employed) upon the premises of his tenant, what any other creditor can only do at the end of the law.

We hold with the chief justice, and resting upon the authorities he cites, and on his own great authority, that "by the bankrupt act all the rights and all the duties of the bankrupt in respect to whatever property not expressly excluded from the operation of the act he may hold, under whatever title, whether legal or equitable, and however incumbered, pass to and devolve upon the assignee at the date of the filing the petition in bankruptcy, and all rights thus acquired are to be enforced by process, and all duties thus imposed are to be performed under the superintendence of the national courts. No lien can be acquired or enforced by any proceeding in a state court after petition is filed, though in cases where jurisdiction has been previously acquired by state courts of a suit brought in good faith to enforce a valid lien upon property, such jurisdiction will not be divested."

Under our act, differing in this respect from the operation of the English bankrupt act, all process is stayed by the assignment of the bankrupt, and among others the process of a distress warrant. It must be in effect executed by the assignee. He takes the property subject to the duty of executing it. It cannot, as under the English system, be executed by the landlord himself, and it is because he cannot that the assignee is bound to do it. And it is only because under the English law the landlord has a right to levy his distress warrant after the assignment, that the duty is not imposed upon the assignee to pay the claim of the landlord and satisfy what the text-books and the most renowned judges of England style, his "lien." The assignment would be regarded as an execution under the statute of Anne, if the landlord had not the right to make his levy and collect his debt in spite of it. In other words the assignment, there, as in this country, would be accepted as a statutory execution, and the right of the landlord, whether based upon the common law or the statute of Anne, would be protected and enforced by the assignee. See In re Appold [Case No. 499].

Our own local reports furnish a case in which the right of the landlord under the statute of Anne is most strikingly illustrated and enforced. It is the case of Lambert v. De Saussure, 4 Rich. Law, 248. The case

and the point ruled is sufficiently stated in the rubric. It is this: "A tenant against whom there was a fi. fa. under stay, made an assignment for the benefit of creditors, of furniture in the house which he occupied as tenant. The execution creditor agreed that the assignee might sell the furniture and hold the proceeds subject to all legal liens. After the assignment, but before the removal and sale of the furniture, the rent fell due. Held, that the assignee was bound to pay the rent in preference to the debt under the fi. fa."

Mr. Justice Whitner, speaking for the supreme court of the state, remarks: "When the assignment was first heard of and examined into, the plaintiffs (in execution) early expressed their willingness, by their attorney, to abide a sale by the assignee in lieu of the sheriff, subject to liens according to law. But without compromising the plaintiffs by any particular form of expression, in point of fact, the sale was made by the assignee. Suppose it had been by the sheriff, in virtue of the execution at the earliest day, according to the indorsement on the record, to wit, the 1st January, 1849. The rent was due to the landlord before that day, and hence the sheriff must have paid the sum claimed on notice, before the removal of the goods under the provisions of the statute of Anne." See, also, 1 Tread. Const. 119; 3 McCord. 38.

There is another view based upon our state legislation, which serves to ascertain the value and rank of the landlord's claim for rent, and to establish the justice of the allowance of it as a preference over general creditors. It will be seen in reference to the act regulating the order in which debts due by testators' or intestates' estates are paid (5 St. S. C. 111, § 21) that rent must be paid before bonds or other obligations. Rent is paid to their total exclusion, if there be not funds to pay both. The analogy is the stronger from the fact that this order of payment is as to an estate and an insolvent estate. In both cases the debts must be paid out of the estate. There is no other fund to look to. In either case each party, so far as his creditors are concerned, is, in legal contemplation, equally dead. Neither has any future upon which the creditors can proceed. He who is dead is done with earth, and can work no more for his creditors. And he who is discharged in bankruptcy is no longer legally bound to work for them; his release from his creditors is as perfect under his certificate of discharge as he who is released by death; and whatever property he may subsequently make is his, and not legally liable for his debts. Death in the one case and the certificate in the other is an equally valid discharge from all obligations. The creditor can alone in either case, therefore, look to the estate, and if not paid out of it, he must go unpaid so far as the law can help him to payment.

The case of a general creditor whose claims rest on a specialty, or note, or open account, in the case of a deceased person's estate, and who is postponed and excluded by the claim for rent, is certainly equally hard as that of a like creditor under the bankrupt law. And let it be observed that this satisfaction of the claim for rent is without limitation as to time, so far as the general creditor is concerned. It is paid in full for whatever time as respects him. It is a charge upon the whole estate, which must be satisfied before any unsecured obligation can be paid, and to the extent of a year's rent is a paramount lien upon any personal property upon the premises of the deceased, being "one of those cases where a creditor may have a lien on any particular part of the estate." 5 St. S. C. p. 111, § 26. And here let it be remarked, so far as the hardship of excluding the general creditor and preferring the landlord under the law is concerned, that they both contract under the law and in reference to it. For illustration, when this contract between the bankrupt, Purcell, and the claimant, Mr. Wagner, was entered into, and Mr. Wagner parted with the Mills House, it was upon the security which the law gave him for his rent. He confided in that security. He knew he had the right of distress generally; he knew that to the extent of one year's rent he had a lien under the statute of Anne, paramount to a hostile execution; he knew that in the event of his tenant's death, he had a lien or preference protected by law extending to all his estate, as against the general creditors of the estate. And it is, in my esteem, legitimate to say—I am not advised to the contrary by any decision—that to the extent of one year's rent in such contingency he had also a lien upon the furniture of his tenant, paramount to all other liens, as in the category of "those who have a lien on every particular of the estate," under the act heretofore referred to. And all the other creditors of Mr. Purcell contracted with him with reference to those rights of the landlord. When they trusted their money or other property to him it was with the knowledge of these rights. They were at liberty to protect themselves by demanding adequate security. If they trusted to his sufficiency to pay in any event, it is their misfortune. They knew they were dealing with one who had special claims upon him, qualifying their claims and putting them at hazard. It is a hardship that they suffer, but it is a legal hardship, and one they risked, when, without security, they trusted their property or loaned their money to the bankrupt. It is certainly a usual and a prudent thing, and a just thing as well, that when a man parts with his property he should have security for its return. The banks exact it. Money loaned on land by individuals, almost as a matter of course, is secured by bond and mortgage or confession of judgment. It is not objected to the banks or individuals in these cases that security is demanded and exacted. Yet rent is in substance so much money, and the claim that it should be made secure is certainly equally reasonable. In a mere business point

of view is it not equally fair and just that I should demand security for the loan of my house as the loan of my money? The landlord, in this case, trusted to the security of his legal preference and protection. If the law did not afford him protection, is it not true, in the nature of things, that as the banks and other capitalists, the landlord would require in advance security for his rent, the loan of his property? A lien in some shape, or security equivalent to it in each doubtful case, would be exacted. Generosity and gratuities do not belong to money transactions or the exchanges of property in any form. When a man gives a certain property he wants a certain equivalent in return, and to get back what he gives. When he gives so much value as in the shape of the loan of a house, he wants so much value in the shape of rent, and to be as secure in getting it as the other party is secure of getting its equivalent; all else is gratuity and kindness, and strict business-like commerce and exchanges of values with mutual security.

It is my judgment, therefore, on the whole, under the statute of Anne, unrepealed by the military order of General Sickles, and still in force and operation, as much so as the lien under the intestate's act, that to the extent of one year's rent and interest on the amount, due notice having been given to the assignee, the lien of the claimant, Mr. Wagner, is valid, and it is made the duty of the assignee, as the representative of the rights and the duty of certain bankrupts under the act, to satisfy it out of the proceeds of the personal property on the premises. It is therefore ordered and decreed, that the assignee in each of the above cases do pay into the registry of this court the amount reported to be due for one year's rent, with interest, from the bankrupts respectively to their respective landlords.