McCONE (COOLIDGE v.). See Case No. 3,186.

McCONICO (HOPKIRK v.). See Case No. 6,696.

## Case No. 8,712.

### In re McCONNELL.

[9 N. B. R. 387;[1] 10 Phila. 287; 31 Leg. Int. 61; 21 Pittsb. Leg. J. 107.]

District Court, D. New Jersey. Feb. 3, 1874.

BANKRUPTCY—AMENDING PROOF—SECURITY—RENT—WAGES—PRIORITY.

1. A sale of the goods of a manufacturer who had been declared a bankrupt was made by order of court at the manufactory, and the proceeds paid to the assignee, which amounted to two thousand one hundred and sixty-six dollars and seventy-four cents. The landlord claimed two thousand seven hundred dollars for one year's rent: there was also due to operatives fifteen hundred dollars. The laws of New Jersey secure to the landlord a preference over oth-

er creditors, for one year's rent, from the proceeds of the sale of personal property on the demised premises; the same privilege to operatives in manufactories, for one month's wages. The landlord proved his claim for rent as an unsecured creditor, but afterwards asked leave to amend the proof by setting forth his security. To this the assignee objected, and claimed further that the operatives were entitled to be paid for one month's wages in preference to the claim of the landlord. Held, that a creditor having security, and proving his demand in ignorance of his privilege, and omitting to mention his security, should be allowed in the absence of fraud to amend his proof.

2. The twenty-eighth section of the bankrupt act [of 1867 (14 Stat. 530)] does not give to the five classes of creditors therein enumerated, any priority over secured creditors. By the laws of New Jersey, landlords and operatives, in cases of this nature, are entitled to the payment of their preferred claims, pro rata.

[In the matter of William McConnell, a bankrupt.]

E. Mercer Shreve, for landlord.

John H. Voorhees, for assignee and operatives.

NIXON, District Judge. A petition in bankruptcy in this case was filed by creditors against the bankrupt, May 10th, 1873. After adjudication, but before the appointment of the assignee, to wit, May 22d, 1873, upon representation made to the court, on behalf of the creditors, that the personal property of the bankrupt was of a perishable nature, and deteriorating in value, an order was entered directing the marshal in charge to make sale of the same, and to pay over the proceeds thereof to the assignee, when he should be appointed. The assignee has received from the marshal, and holds for distribution, the sum of two thousand one hundred and sixty-six dollars and seventy-four cents, which is claimed by T. Edgar Hunt, the landlord of the bankrupt, for rent due to him from the bankrupt, at the date of adjudication, for the premises on which was the personal property, at the time of the sale. By the contract between the parties the amount of rent for one year to May 1st, 1873, due to the claimant, was two thousand seven hundred dollars and seventy-seven cents, for the payment of which he claims a lien and preference upon the fund in the hands of the assignee. The bankrupt at the date of the adjudication occupied the premises as a manufacturer, and was engaged in the manufacturing business. He had in his employ a number of operatives, to whom he was indebted in various sums for labor. It is also claimed that these operatives are entitled to a preference in the payment of their demands against the estate. First, by virtue of the first section of the act, entitled, "An act to secure to operatives in manufactories, and other employees, their wages," approved March 13th, 1856; and, second, by the provisions of the twenty-eighth section of the bankrupt act, subject, however, to the limitations in both of these acts.

[1] [Reprinted from 9 N. B. R. 387, by permission.]

First. In regard to the claim of the landlord. The bankrupt act makes no provision for a preference in favor of the landlord; but, in its administration, it is undoubtedly the duty of the court to recognize and enforce any lien which he may have by virtue of the state law. In re Wynne [Case No. 18,117]. By the fourth section of the act concerning landlords and tenants (Nix. Dig. 490), no goods and chattels are liable to be taken from demised premises by virtue of any execution, attachment, or other process, unless the party at whose suit the process is sued out, before the removal of the goods from the premises, shall pay to the landlord all rent due, not exceeding, however, one year's rent. The warrant by which the marshal seized the goods and chattels in question being a process, the landlord's lien existed at the time of the seizure, and, in the theory upon which the bankrupt law is administered, still exists upon the fund in court, unless he has done something to waive or avoid his preference. But it is insisted, in behalf of the assignee, that the landlord has waived his lien or security, by making proof of his whole demand against the estate, as an unsecured claim. It appears that the 9th day of June, 1873, was the time appointed for the first meeting of the creditors for the election of an assignee; that the claimant made proof of his debt before E. R. Bullock, Esq., United States commissioner, on the 6th day of June, for three thousand one hundred and sixty-four dollars and thirteen cents, in which was included his claim for rent and interest thereon, amounting to two thousand nine hundred and seventy-five dollars and eighty-six cents; that he claimed the whole sum as unsecured creditor, alleging in his proof, that he had not received any satisfaction or security whatever, for any portion thereof, and that he filed this proof with the register, at the time of the election of the assignee, and participated as an unsecured creditor in the said election.

It also appears in the evidence that the claimant has had conversations, not only with the marshal at the time of the sale, but with the assignee at various times since his appointment, in reference to a lien which he had, or ought to have upon the goods, for the payment of this rent; that these conversations, however, were rather suggestions on his part that he should have a lien, than a claim that he had such right. He testified, that except these general talks on the subject, he never claimed of the assignee any preference as landlord, until after he employed Mr. Shreve, as counsel, in October, 1873. It further appears that there is nothing in the case which in the slightest degree impeaches the good faith of Dr. Hunt. He seems to have acted throughout, in ignorance of his privilege, as landlord, and this ignorance arose either from his not making the proper inquiries in regard to his rights, or from being misled by those upon whom he relied for information. Under the circumstances, it becomes an interesting question, whether, in deference to the claims of the unsecured creditors, the court must hold these acts, or omissions, of the claimant to be a waiver of his security, or whether he should now be permitted to withdraw or amend his proof, and take the fund in satisfaction of his claim, as the landlord of the bankrupt.

The general rule of law unquestionably is, that a proof of debt by a secured creditor, without reference to the security, and without apprising the court of its existence, is a waiver and relinquishment of the security. Stewart v. Isidor, 5 Abb. Prac. (U. S.) 68; In re Bloss [Case No. 1,562]; Wallace v. Conrad, 3 N. B. R. 10; In re Stansell [Case No. 13,293]. This result is supposed to spring necessarily from the nature of the transaction, and because the creditor, by such proof, perpetrates a fraud upon the rights of the general creditors. The object of the proof is to enable him to have a voice in the selection of an assignee, and to participate in the dividends of the estate. A secured creditor cannot vote, nor can he share in the dividends, until the value of his security or lien has been ascertained, and he has proved for any excess of his demand above its value. By proving for his whole debt, and concealing his security, he puts himself in a position to have equal dividends with the other creditors, although he may also receive payments, in whole or in part, from the property on which he has his lien. But it is a familiar principle that, when the reason of a rule ceases, the rule itself does not apply. Was any such fraud intended, or could it result in the present case? The claimant does not insist upon his lien, and at the same time asks that his proof may stand. As soon as he is advised that a mistake has been committed in putting in his proof, he asks to withdraw or amend it, in accordance with the requirements of the act. Why should he not be allowed to do so? Who has lost any rights by his mistake, or been misled by it? His lien existed when the petition in bankruptcy was filed, and the petitioning creditor knew, or ought to have known, that the interests of the general creditor in the estate were in subordination to his claim for rent, as the landlord of the premises. The only privilege resulting to the claimant, by filing his proof without referring to the lien, was, that he took part in the election of an assignee. My first impression was, that this ought to preclude him from being allowed to amend his proof. But there is no evidence that he gained any advantage thereby, or that the other creditors have been in any wise prejudiced in consequence of it, or that the claimant was influenced by any fraudulent intent in thus proceeding. In the absence of proof, it is the duty of the court to presume that none existed.

The general rule above stated that a proof of claim, without naming the security, is an implied waiver or relinquishment of the security, has long been recognized in the ad-

ministration of bankruptcy estates in England, and it is founded upon the presumption of fraud in the creditor. The cases of Ex parte Solomon, 1 Glyn & J. 25; Ex parte Downes, 1 Rose, 96; and Ex parte Hornby, Buck, 351,—are generally relied on to sustain the rule. But in a subsequent case pending in the exchequer (Grugeon v. Gerrard, 4 Young & C. 119), where this broad position was urged by the counsel in the argument, Maule, J., in delivering the opinion of the court, said: "Whether, on application to the court of review, the assignees (in bankruptcy) may be able to make out a case, which may induce that court to order the bank to deliver up their securities, is a matter on which it is not for us to speculate. Great jealousy is properly felt, on the part of those who exercise jurisdiction in bankruptcy, against permitting parties who have proved on the footing of holding no security, afterwards to withdraw their proof and set up a security. But where, as in this case, the proof has obviously been made in ignorance of the existence of the security, it is highly probable that the court would grant relief." Under the bankruptcy act of 1841 [5 Stat. 440], Judge Randall, of the district court for the Eastern district of Pennsylvania, in Ex parte Harwood [Case No. 6,185], allowed a creditor to withdraw the proof of his debt, it appearing that under a mistake of the law, he had proved for the full amount of his demand, without deducting the value of his security. In delivering his opinion, he said: "In this case there was no concealment, and there is no allegation of fraud. Nor is it pretended that the creditor elected to surrender his securities, and come in on the estate for a dividend of the general assets. * * * The proof having been made for the full amount of the creditor's demand, without deducting the value of the security, as should have been done, and this appearing to be through mistake, the creditor has leave to withdraw his proof of debt." And under the present bankruptcy law, Judge Jackson, of the district court of West Virginia, in Re Brand [Id. 1,809], reached the same result. "The action of the creditor in the case," he said, "presents the naked question, whether, being ignorant of his legal rights, he shall be held to intend what his acts would seem to imply. I think not. It is manifest from his affidavit, that his object was to give the assignee notice of his claim, and it evidently did not occur to him, that in doing so, he would waive any legal right. His action merely showed a want of familiarity with the provisions of the law. This fact should not operate to his prejudice, when we know that much diversity of opinion exists in the courts as to the true construction of some of its most important provisions. For the reasons assigned, I am not disposed to require a creditor, who inadvertently or ignorantly proves his debt, unaccompanied with fraud, to surrender his lien and participate in the general distribution of assets, but feel inclined to permit a creditor, under such circumstances, if he elect to do so, to withdraw the proof of his debt and rely upon his security."

Without multiplying authorities, I am of the opinion, that there is no proof of fraud on the part of the claimant, that should constrain the court to refuse to allow him to amend his proof in conformity with his rights in the estate at the time of the adjudication, and that his mistake in the premises ought not to be held to discharge his lien. But the case does not end here. The net proceeds of the sale of the goods and chattels amounted to two thousand one hundred and sixty-six dollars and seventy-four cents. The rent due to the claimant is ascertained to be two thousand seven hundred dollars and seventy-eight cents, which will more than absorb the fund in the hands of the assignee. It appears that there is also due to the laborers and operatives, for work and labor in the manufacturing establishment of the bankrupt, about eighteen hundred dollars; and the counsel of the assignee insists that by the twenty-eighth section of the bankrupt act they are entitled to a preference over the landlord. But I think he has misapprehended the provisions and intent of the section. It creates preferences in the distribution of the bankrupt's assets, and states the order of payment to be observed by the assignee. It does not refer to any part of the estate derived, as in the present case, from the sale of property, on which creditors may have a specific lien. If the assignee has any distribution to make to the general unsecured creditors, he must take notice that this section enumerates five classes of creditors, who are to receive their claims in full, in the order stated, before any dividend is declared; the fourth class being to operatives, clerks, or house-servants, who are to be paid an amount not exceeding fifty dollars, for labor performed within six months next preceding the first publication of the notice of the proceedings in bankruptcy.

It is further insisted that the operatives and employees are entitled to be paid out of this fund, to the extent of one month's wages, in preference to the landlord, by the provisions of the first section of "the act to secure to operatives in manufactories, and other employees, their wages," passed by the legislature of New Jersey, and approved March 13th, 1856. The first section provides, that no goods or personal property, belonging to any manufacturer, or other person or corporation, shall be liable to be removed by virtue of any execution, attachment, or other process, unless the party at whose suit the process was issued, shall first cause to be paid to the operatives, mechanics, and other employees, of the manufacturer, person, or corporation, the wages then owing

to them, provided the same shall not exceed one month's wages. The second and only remaining section, makes provision for their subsequent payment, if the officer holding the writ should in fact remove the goods without first making the payment required in the first section. The phraseology of the two sections is so strikingly similar to the fourth and fifth sections of the act concerning landlords and tenants, that the conclusion is irresistible, that the former was copied from the latter. What was the intention of the legislature in passing the latter act? Did they mean to give to operatives and employees a preference over the landlord, in the payment of a month's wages, or did they mean to put them upon the same footing? If the former, then the last enactment must be held to repeal pro tanto the sections which secure to the landlords a privilege over other creditors. But no repealing clause occurs, and repeals of statutes, by implication, are not favored by the courts. It was said by the supreme court, in McCool v. Smith, 1 Black [66 U. S.] 459, that one statute is not to be construed as a repeal of another if it be possible to reconcile the two together. And Dwarris, in his Treatise on Statutes, 154, of the American edition, says: "Every affirmative statute is a repeal of a precedent affirmative statute, where its matter necessarily implies a negative; but only so far as it is clearly and indisputably contradictory and contrary to the former act in the very matter, and the repugnancy such, that the two acts cannot be reconciled; for then, 'leges posteriores, priores contrarias abrogant.' The leaning of the courts is so strong against repealing the positive provisions of a former statute by construction as almost to establish the doctrine of no repeal by implication."

In the absence of repealing words, and where an apparent conflict arises between the new law and the old, it is the duty of the court, if possible, to give such a construction to their provisions, that both may stand. This can only be done in the present case by holding that the legislature intended to give to the operatives and the landlord a preference over all other creditors, and at the same time to put them on an equal footing as to each other; and where the goods and chattels are not of sufficient value to pay both of these classes in full, to allow them to share the proceeds pro rata.

It is therefore ordered that a reference be made to the register to ascertain the amounts due to the operatives, not exceeding in any case one month's wages, and not allowing interest after the date of adjudication, and that the assignee distribute pro rata the fund in hand to the claimant and to them, according to the proof of their respective demands. As no diligence has been manifested, either by the landlord or the workmen, to assert their lien upon the goods and chattels in question, and as the bankruptcy

proceedings have been carried on by the assignee, in ignorance of their intention to claim a preference, it may be proper to first deduct from the fund, at least a portion of the costs and expenses of the proceedings. But no order can be made in the matter until the court is better advised respecting the condition and assets of the bankrupt estate.