BRAZOS, The M. R. See Case No. 9,898.

---

## Case No. 1,822.

### In re BRECK et al.

[8 Ben. 93;[1] 12 N. B. R. 215.]

District Court, S. D. New York. April Term, 1875.

LANDLORD AND TENANT—LEASE—RENT—USE AND OCCUPATION AFTER BANKRUPTCY—FIXTURES.

1. B. and S., at the time of their being adjudged bankrupts, were occupying premises in their business of sugar refiners, under a lease from R. In the building was machinery belonging to them, which could not be removed without injury to the building. It was allowed to remain there for sixteen days, when it was sold by the assignee to F., who immediately hired the premises of R. and continued the business on the premises. R. applied to be paid by the assignee in bankruptcy for the occupation of the premises during the sixteen days, at the rate of rent stipulated in the lease: *Held*, that the lease was cancelled by the bankruptcy as, by its terms, it could not be assigned without the written consent of the landlord;

2. That the tenants had the right to remove the machinery, and the bankruptcy court had that right;

3. That if, in removing the machinery, the building had been injured, the landlord would have been entitled to re-imbursement for such injury, and the fact that the allowing the machinery to remain saved the building from injury, was not such a benefit to the landlord as deprived him of the right to be compensated for the use and occupation of the premises during the sixteen days;

4. That, as it appeared that there was injury to the landlord and benefit to the bankrupt's estate from the use and occupation of the premises, the landlord was entitled to be compensated therefor; and that the rate named in the lease was a reasonable rate for such compensation.

[Cited in Re Ives, Case No. 7,116; Re Secor, 18 Fed. 320.]

[See In re Fowler, Case No. 4,997.]

In bankruptcy. Richard S. Roberts presented a petition to the court, setting forth that Breck & Schermerhorn [William P. Breck and William B. Schermerhorn] were adjudged bankrupts on December 16th, 1873, on a voluntary petition; that, at the time of filing their petition, they were in possession, as tenants, of premises belonging to the petitioner, under a lease for nine months from May 1st, 1873, at a rent of $4,800 per annum, in which premises they carried on the business of sugar refiners; that the premises continued to be occupied by their machinery and goods, in charge and custody of the register, from December 16th, 1873, to December 31st; that the rent for that period, by

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

the lease, would have been $213.34, and the premises were worth that sum to the estate of the bankrupts, but the assignee refused to pay it; and the petition prayed for an order to the assignee to pay that sum to the petitioner. [Petition granted.]

On this petition the court ordered a reference to the register to take proof of the facts and report them to the court, with his opinion thereon. The register reported that he had taken the testimony, and further as follows: "And I further certify and report that the building in question, at the time of filing the bankrupt's petition, was wholly used and occupied as a sugar refinery, with a large amount of machinery in and through the same. That, at the expiration of 16 days or thereabout, after the filing of said petition, the said machinery was sold to Thomas Freeborn, for the sum of $12,000, who immediately hired and leased the said premises of the said petitioner, and has ever since used and occupied the same as the tenant of the said petitioner. That said machinery was fastened to the building in various ways, and was a part of the freehold except as between the bankrupt and said petitioner. That to have removed it from said building would have greatly damaged said building and would have rendered it difficult, if not impossible, to have rented the same for any purpose until the following May. That, by allowing the said machinery to remain there during said 16 days, the said petitioner was saved great damage to his building, and was enabled at the expiration of said 16 days to rent the same for probably the only purpose for which it could have been advantageously rented. That, by reason of the course pursued, the said petitioner was spared great loss and derived much good by so letting the premises as aforesaid. The status of the petitioner in reference to the property in question was fixed by the act of bankruptcy—the filing of the petition. That status, be it beneficial or otherwise, must be accepted by him as well as by all parties and persons that may be affected thereby. The landlord found, by this act of bankruptcy, his lease canceled and his building full of machinery so fastened to the walls that it would cost him a large sum to get it out. It is no matter whether this misfortune came upon him by an act of bankruptcy or by an earthquake. It is his misfortune and he must make the best of it. If he wants to use his building and cannot do so till the machinery is out, he must get it out at his own expense. He cannot call upon the bankrupt or upon the estate to do this for him. If the machinery is ruined by being removed, it is still his right to remove it—doing no unnecessary injury—and the estate must sustain the loss. It is usual and no doubt the duty of the register in charge, if it be a case of voluntary bankruptcy, or the marshal, if it be a case of involuntary bankruptcy, to look after the property and see that no waste en-

sues. Indeed, such officer is in duty bound to act discreetly and prudently for the interest of the estate. If the premises are desired for any period, he should make such prudent arrangement with the landlord as he may be able to make for the use of them. If any of the property is likely to be injured by a removal, he should see to it and prevent any such injury by a careful removal and storing it where it may be secure from harm, or otherwise apply to the court for an order to sell the same at public or private sale, as may be most for the interest of creditors. But, in case there be no agreement, that the landlord may make a valid claim for use and occupation of his premises against the estate, two things must concur· first, injury to himself, and second, benefit to the estate. Where both these concur, the law will imply a promise on the part of the estate to pay what the use of the premises under all the circumstances may be reasonably worth, having reference to the actual loss or damage sustained by the landlord. If the period in question were winter and there were no prospect or opportunity to rent the premises before the following May, it is clear that such fact should enter largely into the estimate of value or damage. So, if it were near the first of May and the landlord had a prospect or opportunity to rent, or there were danger of losing the opportunity of renting, such fact should also be considered. This is clearly the doctrine of In re McGrath [Case No. 8,808], and the doctrine upon which the court in this district has uniformly acted. In the case now before me the petitioner presents himself, asking for damages where no damage has been sustained, but much good has resulted to him from the acts of which he complains. Any other doctrine would be most injurious to estates and result in great injustice. The creditors of the bankrupt have to accept the status of the bankruptcy and are as much entitled to the consideration of the court as the landlord. They are in this view placed upon a just equity—that equity which is the vital principle of the bankrupt act. I therefore recommend that an order be entered dismissing the petition."

For the petitioner, E. Ketchum, Jr. [The assignee, in person.][2]

BLATCHFORD, District Judge. While I concur in the general principles stated by the register in his opinion in this matter, I do not concur in his application of them to the facts of this case or in his conclusion. The tenants had a right, as against the landlord, to remove the machinery, and the bankruptcy court had such right. But if, in such removal of the machinery, the building was injured, a claim would exist on the part of the landlord, both under the terms of the lease, and on general equitable principles, to be re-

imbursed the amount of such injury, by the parties removing the machinery. The fact, therefore, that such injury was prevented by not removing the machinery is not a circumstance that can be considered on the score of benefit to the landlord, in passing on the question before us.

As to the suggestion that the purchaser of the machinery hired the premises at once, and that thus the leaving the machinery on the premises until it was sold was a benefit to the landlord equal to the amount of the rent he claims for such time, in giving him a tenant promptly, it appears clearly, from the evidence, that the benefit to the bankrupt estate from not removing the machinery was far greater than any benefit to the landlord therefrom, leaving a value in the use and occupation of the premises to be compensated for. The lease was undoubtedly cancelled by the bankruptcy, as, by its terms, it could not be assigned without the written consent of the landlord. So, also, the misfortune of the landlord in finding the lease at an end with the building full of machinery, was one which he must bear, in so far as it would interfere with his making a new lease until the machinery should be removed. But that circumstance ought not to affect his right to compensation for the use and occupation of the premises by the machinery until it was removed. There were in this case both injury to the landlord and benefit to the bankrupt estate, from such use and occupation, in view of the foregoing considerations. The evidence is very strong that the estate was greatly benefitted by not removing the machinery; that the benefit was far in excess of the amount claimed for the use and occupation; that it was reasonable and proper not to disturb or remove the machinery; and that the rate named in the lease is a reasonable rate of compensation for the use and occupation of the premises for the time in question. This conclusion seems to me to be fair and just to both parties—the landlord and the creditors of the bankrupts. An order will be entered that the assignee pay the sum of $213.34 for the sixteen days' occupation of the premises.