## In re HAYS, FOSTER & WARD CO.

(District Court, W. D. Kentucky. October 13, 1902.)

1. BANKRUPTCY—LIABILITY ON LEASE—SUBSEQUENT RENT.

Where a tenant is adjudged a bankrupt, such adjudication terminates the existing relation of landlord and tenant, and the landlord is not entitled to prove, as against the bankrupt's estate, a claim for rent accruing after the adjudication, though the tenant had executed notes therefor.

2. SAME.

Semble, that the rule might be different where the landlord becomes bankrupt.

J. D. Moquot, for petitioner.

EVANS, District Judge. Max B. Nahm filed a claim in this proceeding for a balance of rent alleged to be due him upon a lease of certain premises. The referee having disallowed the claim, a petition has been filed for a review of that action. The material facts appear to be as follows: (1) On the petition of certain creditors, filed May 28, 1900, alleging that on May 1, 1900, the bankrupt had made a general assignment for the benefit of all his creditors, the corporation was adjudged bankrupt on June 22, 1900. (2) On the 14th day of July, 1900, J. W. Campbell was chosen trustee. (3) The bankrupt corporation was tenant for a term of five years, beginning May 10, 1898, of certain premises in Paducah, Ky., belonging to the claimant, Max B. Nahm. The rent was payable monthly, and a separate note for $137.50 was given for each month's rent. (4) A. W. Foster had been named as assignee in the deed of assignment referred to in the petition. While in possession, as such, of the leased premises, and of the stock of merchandise belonging to the bankrupt, on May 10, 1900, upon the alleged consideration that Nahm should refrain from suing out an attachment for his rent, he consented to deposit and did deposit in the American German National Bank, as security therefor, the sum of $3,000. Subsequently this sum of money was turned over to the trustee in bankruptcy. (5) Before the petition was filed, and, of course, before the adjudication in bankruptcy, namely, on May 10, 1900, and possibly notwithstanding the deposit of the $3,000, the landlord, Nahm, exercised a power reserved under the lease, and declared a termination of the tenancy as of May 10, 1901. (6) Foster, the assignee under the general assignment, converted all the property into cash, and he or his subtenants occupied the premises from May 1, to August 10, 1900, and paid the rent accruing to the landlord for that period. (7) The trustee in bankruptcy never used or occupied the premises in any way, but refused to do so, or to accept the keys to the buildings thereon. (8) Immediately after the election of Campbell as the trustee in bankruptcy, the landlord demanded of him the balance of the year's rent, namely, $1,237.50, though no part of it was then due. (9) On the 22d day of October, 1900, the landlord, leaving outstanding the other notes maturing in subsequent months, rented the premises to another satisfactory tenant, but now claims from the trustee $330, the rent alleged to have accrued

between August 10 and October 22, 1900,—all, of course, after the adjudication on June 22, 1900, and for all of which the landlord held the promissory notes of the bankrupt. Whether that particular rent shall be paid out of the bankrupt's assets, and as a preferred claim, is the only question to be decided.

The question thus raised is the same as that involved in the case of In re Jefferson (D. C.) 93 Fed. 948, 2 Am. Bankr. R. 206, where, after very careful consideration of it, both upon principle and the authorities, the court reached the conclusion that, where the tenant is adjudged to be bankrupt, the relation of landlord and tenant, ipso facto, comes to an end, and consequently that there cannot, under section 63, be a "provable debt" against the bankrupt's estate for rent alleged to have accrued after the date of the adjudication. From that time on there is no tenant, and no one to perform the duties or discharge the obligations of a tenant; the bankruptcy act, in prescribing the duties and authority of a trustee, not making it one of them, and reason and the principles of law not of themselves impressing that duty upon the office of trustee in bankruptcy. The reasoning upon which the court reached its conclusion is quite fully stated in the opinion in that case, and need not now be repeated at much length. The views then expressed do not seem to have met the approval of Judge Lowell, as shown in his opinion in the case of In re Ells (D. C.) 98 Fed. 967, though the accuracy of his deductions seems to have been doubted by the circuit court of appeals of the Fifth circuit when it considered the case of Atkins v. Wilcox, 44 C. C. A. 626, 105 Fed. 598, 53 L. R. A. 118. But not only is the conclusion reached in the Jefferson Case supportable upon just principles and the cases cited in the opinion then delivered, but the precise question was ruled the same way by Judge Purnell in Bray v. Cobb (D. C.) 100 Fed. 270. The authorities referred to in the Jefferson Case as maintaining the proposition therein announced were the cases of Bailey v. Loeb, 2 Fed. Cas. 376, decided in 1875 by Mr. Justice Woods; In re Webb, 29 Fed. Cas. 494, decided by Judge Ballard of this court; and In re Breck, 4 Fed. Cas. 43. Other judges have probably expressed opinions upon the subject one way or another since the present law was passed. This conflict has led me to reexamine the question with much industry.

The rule announced in the Jefferson Case is, I think, upon the whole, beneficial to the landlord, inasmuch as, although in some instances he might find on the premises property sufficient to meet the demand for rent, in most others this would probably not be the case; but in every instance, if that rule be sound, he would have the right promptly to find a new tenant, and could do so more advantageously than any one else, being more interested. Section 64b, cl. 5, of the bankruptcy act, gives priority of payment to any person who by the laws of the United States or of the state is entitled to priority. Probably the word "person," in this connection, should also be construed to mean "claim," but the laws of Kentucky (Ky. St. c. 75) do not give a landlord's demand for rent any absolute right to priority of payment. What the Kentucky law does is to create a "lien" upon certain property found upon the leased premises, which the bank-

ruptcy act preserves and effectuates.  If there is no such property, there is no lien to enforce; and, if the claim for rent is a "debt," it must stand in the position of other debts, even though evidenced by notes, and must take its chances of pro rata payment upon the same basis as ordinary claims.  This result is not changed by a general assignment.  Ky. St. § 74.  A demand for rent not being entitled to any priority of payment except through a lien given by the statute upon property, if there is no property for it to operate upon such a demand must range with other simple-contract debts; and, though the trustee in bankruptcy owned the leasehold, the landlord then could only prove the debt evidenced by the notes for rent, and could only obtain thereon payment pro rata with other unsecured creditors, thus imposing upon the trustee possession of premises he neither wanted nor needed, and upon the landlord the loss of most of the rent which might accrue subsequent to the adjudication.  These illustrative suggestions point out how much better for all parties is the general rule acted on in the Jefferson Case, which enforces the payment of rent up to the adjudication, and leaves the premises free to the owner thereafter.  Of course, if the trustee uses them, he makes the trust estate liable for the value of such use; but this is because he was in possession and actually used the property, and not because of the previous tenancy of the bankrupt.  These considerations of advantage or convenience should not, however, modify or control the operation of those logical principles which should govern the court in determining the question.  As I conceive it, the true grounds upon which the decision must rest are that after the adjudication the landlord has no tenant; that the bankrupt thereafter is legally impotent to be such; that the trustee, not having by law any power to continue to conduct the business, has ordinarily no use for the leased premises, and has no authority under the statute to be the tenant in substitution for the bankrupt, though, if necessary to carry on his business of selling the trust assets, as distinguished from that which had been carried on by the bankrupt, he may rent the old premises or new, at his option, and pay the cost thereof as part of the expenses of administration.  Under these circumstances there is no "fixed liability" for a demand "absolutely owing" to the landlord at the time of the adjudication, except for the rent which had accrued or been earned up to that date; and certainly, in the nature of the case, no such debt can accrue against the bankrupt after the adjudication, and, if not, it cannot be proved against his estate as one of his debts.  Section 63.  There is no just reason why the bankrupt's estate should bear any such burden.  The landlord cannot have every advantage while other creditors are probably losing most of their demands.  Other creditors irremediably lose their debts.  The landlord loses only his tenant, and may recoup that loss by reletting the premises.

The trustee succeeds to the legal title in the assets and property of the bankrupt, but does not succeed to the duty of performing any of his obligations.  They are discharged by the proceeding in bankruptcy, leaving no one bound to perform them further than the distribution of the assets under the orders of the referee will do it.

117 F.—56

A leasehold or term bought and paid for in advance would be an asset, but a mere right to use real estate upon the condition of paying full current rent for it, if property or an asset at all (unless in cases too rare to change the result), is so in a sense so attenuated as not to be worth considering in practical affairs, and so unimportant as not to affect the common-sense rule followed in the Jefferson Case.

As pointed out in the opinion in the Jefferson Case, rent and use or occupation, or the right or opportunity to occupy, are dependent and correlative terms. Rent cannot accrue without a tenant. The bankrupt himself manifestly ceases to be such at the adjudication, and the trustee is not authorized by law to become such in his stead. He cannot continue the "business," and, though he may sell the "property" of the bankrupt, he is under no legal obligation while doing so to use the real estate of which the bankrupt had been tenant. He may, under the control of the court, and if necessary, procure and use any other, if thought better. Whatever, therefore, may be the law of Kentucky as to the lien of the landlord, is not now very material. Such lien will, of course, be enforced for what is due up to the adjudication, but, as the tenancy is thereby ended, no further debt against the bankrupt can thereafter accrue. Without a debt there can be no lien, and the idea of a lien without a demand to support it is an abstraction.

Section 2317 of the Kentucky Statutes, which gives the landlord a lien for the rent of his premises, must necessarily go upon the idea that the tenancy will continue, for it cannot be that if that ceases the rent will nevertheless go on. This must be so, because the state cannot by legislation release or impair the obligation of contracts; and an assignment for the benefit of creditors, while it may secure an equal distribution of assets, in no way discharges the debtor's liability to pay any balance of his indebtedness not satisfied by the distribution of his property among his creditors. Hence the contract with the tenant stands notwithstanding the assignment. The bankruptcy act, however, dissolves and discharges the liability of a tenant to his landlord, as well as every other, and makes it legally impossible for him, after the adjudication, to continue the liability to pay rent, unless there is a new contract. This destruction of the liability of persons under contract finds no exception in the case of a landlord. The indebtedness to him is no more sacred in character than are the obligations to other creditors. It is, indeed, the purpose and essential object of the bankruptcy act to discharge obligations and dissolve contracts which the bankrupt is unable to perform, and the contract of a landlord with a tenant is subject to the same vicissitudes.

Cases have been cited in opposition to the views I have expressed, but it will be found, I think, that few of them have any real application. In re Appold, 1 Fed. Cas. 1075, Austin v. O'Reilly, 2 Fed. Cas. 234, In re McConnell, 15 Fed. Cas. 1297, and In re Hoover (D. C.) 113 Fed. 136, are among such cases, but in not one of them was the question involved or discussed. The only two of the old cases of which the same thing may not be fairly stated appear to be In re Wynne, 30 Fed. Cas. 752, decided in 1868 by Chief Justice Chase,

and In re Trim, 24 Fed. Cas. 197, decided by Judge Bryan in 1871. They arose under state statutes different from that of Kentucky, and, while claims for rent accrued after the adjudication were allowed in both, the precise point now involved was not discussed or decided. However, it may be conceded that they hold a different doctrine, and yet I think the weight of the old cases and of reason is the other way. And it is quite significant that when Mr. Justice Woods decided the case of Bailey v. Loeb, supra, he had before him the opinion of the Chief Justice in the Wynne Case, and also the opinion of Judge Bryan in the Trim Case, but did not follow them. Obviously this was because the Chief Justice and Judge Bryan, who followed him, had overlooked the plain provisions of section 19 of the act of 1867. Manifestly, therefore, those cases were both erroneously decided, and for that reason· they can hardly be the best guides for us to follow. Yet they appear to constitute the basis of the opinions in the Ells Case and in the Mitchell Case, now to be mentioned.

Since the preparation of this opinion was begun there has appeared in the advance sheets of volume 8 of the American Bankruptcy Reports, at page 324, 116 Fed. 87, the opinion of Judge Bradford in the case of In re Mitchell, wherein that learned judge also impugned the accuracy of the decision in the Jefferson Case. The case before Judge Bradford arose under a statute of Delaware, which he says is different from that of Kentucky; and it must be observed, in reading the opinion, that it was not at all necessary to decide the point in passing on the claim for rent against Mitchell. Nearly all of that claim was for rent which accrued before the adjudication, and during the residue of the time for which rent was claimed the trustee used the premises for the purposes of the trust, so that in every event the entire claim ought to have been paid. The result, therefore, was inevitable, but the reasoning was supererogatory, and, I think, unsound.

While there is conflict of opinion as to whether rent accruing after the adjudication, of premises not used by the trustee in bankruptcy, should be paid as a debt of the bankrupt, there seems to be entire agreement upon two propositions, namely: (1) That the lien for rent accrued up to the adjudication must be enforced; and (2) that the trustee must pay the rent after the adjudication for any time during which he occupies the premises. It may be added that the nineteenth section of the act of 1867 (section 5071, Rev. St. U. S.) provided that "where the bankrupt is liable to pay rent or other debt falling due at fixed and stated periods, the creditor may prove for a proportionate part thereof up to the time of the bankruptcy, as if the same grew due from day to day, and not at such fixed and stated periods"; and section 5072 provided that no other debts than those mentioned in that and the other four preceding sections should be proved at all. This was clearly a statutory recognition of the rule of law followed in the Jefferson Case,—a rule founded upon just and logical principles, and which exists, although no provision corresponding to section 5071 is repeated in the act of 1898.

If the views I have expressed be sound, the notes for rent filed with the claim of Nahm failed for want of consideration when the

adjudication was made, and are therefore not sufficient evidence of provable debts against the bankrupt.

It is, furthermore, a not unimportant phase of this case that the assignee, Foster, or his subtenants, occupied the premises until August 10, 1900, and paid the rent for that period, but the trustee in bankruptcy never used or occupied them at all, nor was possession of them ever delivered to him by the assignee. These facts may have a most important bearing on the case, in view of the opinions of the circuit court of appeals and of the supreme court in the cases of Ex parte Comingor, 47 C. C. A. 51, 107 Fed. 898, and Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, wherein it seems to be considered that the assignee under a general assignment holds the estate in his hands adversely to the trustee in bankruptcy. If so, the leasehold of Nahm's premises was held adversely by the assignee along with the other property. He in fact paid the rent while so holding it up to August 10th, and it never was used, nor were the premises ever occupied or possessed, by the trustee. These considerations afford additional, and possibly of themselves sufficient, grounds for the disallowance of the landlord's claim for rent alleged to have accrued after the adjudication.

The arrangement by which the sum of $3,000 was deposited in bank by the assignee as security for the rent, if carefully looked into, might assume an appearance of collusion, but it is not necessary to decide the point.

To avoid any misconception, it may be advisable to add that it is entirely possible that different reasons would require a different result in case a landlord should become bankrupt. In that case, where the legal title to the real estate would devolve upon the trustee in bankruptcy, and who would then be the substituted but temporary landlord by operation of law, the land itself might be regarded as performing such duties to the tenant as his needs required. He would doubtless have rights to the use of the land, which could not and need not be taken from him because of a mere change of ownership of the naked legal title to the premises. Change of ownership of real estate never affects the rights of the tenant. It is a matter with which, in normal cases, he has no concern. The act clearly authorizes the trustee to sell the remainder interest of the bankrupt in the land. But this does not require the destruction of the tenant's rights therein. His interest in the premises depends upon his obligation and ability to pay rent for the use. So long as this obligation and ability continue, his rights continue. When they cease, his rights end. With his bankruptcy both obligation and ability to pay rent terminate. But when the landlord becomes bankrupt the land still remains to serve all the purposes of the tenant. It may be sold quite as well with as without a paying tenant, though, if there be a tenant in possession, he thereafter becomes the tenant of the purchaser. In short, when the tenant is adjudged bankrupt the landlord no longer has one, inasmuch as section 47 does not authorize the trustee to become such, and the relations of the landlord with the tenant cease by virtue of the adjudication; but when a landlord is adjudged bankrupt the tenant by opera-

tion of law still has a landlord in the trustee, who, under section 70, holds the legal title to the premises, and in such case the relation of landlord and tenant may continue. This may clearly mark the distinction between the two cases. In one there is both a landlord and a tenant, each capable of performing his respective duties, while in the other there is not. Upon these considerations it may be that, the reason for the rule stated in the Jefferson Case ceasing, the rule would not apply to the case of a bankrupt landlord. The question does not, of course, arise in this case, but I am glad of the opportunity of pointing out what may be a marked difference.

The Jefferson Case was one of a claim against a bankrupt tenant for rent accrued after the adjudication, and being entirely satisfied with the ruling then made, after a studious re-examination of the question on this hearing, the court must regard the action of the referee upon the claim of Max B. Nahm as altogether proper. It is accordingly approved and confirmed, and the petition for a review will be dismissed